| 60 | 73 |
|----|----|
| 132 | 379 |
| 60 | 73 |
| 169 | 346 |
| 60 | 73 |
| 106a ² | 46 |

# THE CHICAGO ARTESIAN WELL COMPANY *et al.*

*v.*

# FRANCIS E. COREY *et al.*

1. MECHANIC'S LIEN—*how acquired.*  The law of lien enacted in 1845 applied only in cases of express contracts to furnish materials or labor. That of 1861 enlarges the provision so as to cover all contracts, express or implied.

2. LIEN—*proof—request.*  Proof of labor or materials furnished within one year after request, express or implied, will sustain the lien.

3. SAME—*second purchaser.*  A sale of the property after the lien is fixed, to a party cognizant of the encumbrance, gives him no rights as against the lien.

4. SAME—*diversion of materials.*  The diversion to other uses, without collusion of the seller, of a portion of the materials purchased for use upon the premises, does not tend to defeat the lien respecting it.

5. NEW EVIDENCE.  Upon a third trial, new evidence tending to set aside a former decree, must be distinct, positive and overwhelming.

6. COLLATERALS—*sale of by holder, when void.*  One to whom securities are pledged for security of a debt, can not become the purchaser at his own sale.

7. Such sale, if illegal, does not cancel the securities, but the pledgee is remitted to his former rights respecting them.

APPEAL from the Superior Court of Cook county ; the Hon. JOSEPH E. GARY, Judge, presiding.

**74**    CHI. ART. WELL CO. *et al. v.* COREY *et al.* [Sept. T.,

Statement of the case.

This was a proceeding to enforce a mechanic's lien.

The original petition was filed April 6, 1867. It appears that A. F. Croskey held the legal title to the southeast quarter of southeast quarter of section 1, town 39 north, range 13 east, in the city of Chicago—George A. Shufeldt, being his partner in business, having an equitable interest, and the firm being owners of valuable improvements upon the land. The firm purchased lumber of Francis E. Corey & Co., composed of Corey and Amasa Dwight, and thereby became indebted about $2500. The original proceeding was against Croskey alone, but Shufeldt joined in the answer.

The Chicago Artesian Well Company came in as a defendant, alleging purchase of the property from Croskey and wife, March 10, 1867.

Munn & Badger also became defendants, setting up a mortgage for some $11,000, dating before the sale to the well company.

A trial was had, resulting in a decree favorable to the petitioners. The judgment was reversed and the case remanded by the Supreme Court on account of error in draft of decree. 48 Ill. R. 442.

In June, 1870, an amended petition was filed, followed by amended answers. Upon the hearing, the court dismissed the petition on the ground that the petitioners had not established their lien. This decree of dismissal was reversed, and the case again remanded at the September term, 1870. (57 Ill. 251.) A third trial was had, in which further and new testimony was taken tending to defeat the claim of the petitioners. It was also shown that A. C. & O. F. Badger, who held bonds secured by a $100,000 mortgage on the property, had caused them to be sold at auction, becoming themselves the purchasers, and claimed to hold them upon the sale, and to enforce a prior lien for a balance, under the proceedings consequent upon the petition.

Upon the hearing, the court sustained the lien and decreed the sale of the property for the payment of the amount proved,

after payment of the claim of Badger & Darling, for whom he held bonds in trust.

The Artesian Well Company then again appealed to this court.

Messrs. GOUDY & CHANDLER, and Mr. J. N. JEWETT, for the appellants.

Messrs. WAITE & CLARKE, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a petition for a lien by material-men, and has been before this court several times.

At the September term, 1870, it was held by this court, on the testimony then in the record, that a lien had been established by the petitioners. It now comes before this court with the testimony of Wm. T. B. Read superadded, and a bill of interpleader filed by A. C. & O. F. Badger.

By stipulation, the record and abstract filed at the last September term is to be taken and used as parts and portions of the record necessary for this appeal, so far as the facts of the case appear in that record.

The principal witnesses for the petitioners, as appears by the original record, were, Dwight, one of the petitioners, and Croskey and Shufeldt, two of the defendants, and several others; and from their testimony we decided, at the last term, a lien was established. It remains to inquire, does the testimony of Read conduce to a different result?

Upon a careful examination of his testimony, we do not think it weakens, in the slightest degree, the claim of the petitioners to a lien.

Read states he bought all of this lumber, when the proof is he bought none of it. The contract for the lumber was made with one of the petitioners, Dwight, and Croskey, for the company, and to be delivered on Read's orders. He is contradicted also in another point, that the price was agreed

upon. This he could not know, as he was not present at the time the contract was made. His "thinking" the price was "$14," is no evidence that the price of the lumber was $14 *per thousand,* and so agreed and understood by the contracting parties. His evidence does not appear well in the printed abstract, and as he was personally present before the Superior Court, and there examined and cross-examined, he could not have made a favorable impression upon that court. His evidence fails to overthrow that of the other witnesses, on whose testimony a lien was declared to have been established, at the last term. The great preponderance of the testimony is in favor of a lien under the act of 1861. This act requires only, in order to create a lien, so far as the agreement of the owner of the land and the mechanic or material-man is concerned, that labor or materials should be furnished at the request of the owners of the land, for erecting or repairing any building thereon, when no price is agreed upon, or no time is expressly fixed for the payment of such labor or materials, provided, that the work is done and materials furnished within one year from the commencement of the work, or the commencement of furnishing the materials. A contract arises by implication from these facts, the existence of which creates a lien on the land. To bring a case within this act, it is only necessary, by a material-man, to show that he, at the request of the owner of the land, furnished him with materials for making improvements on the land, and the material-man, afterwards, in compliance with this request, furnishes the materials, and they are used for the purpose indicated : then a lien is created, by the act of 1861, for the value of the materials, provided they are furnished within one year, and there need not be any other agreement, express or implied, in order to the creation of the lien.

. We are satisfied, from a full review of the whole case, in the light of the additional testimony of Read, that petitioners have established a lien on these premises. The request of Croskey and company, to the petitioners, to furnish to Read the lumber, to be used on the artesian well premises, and being furnished

under this request, and used on the premises, are all the elements essential to the creation of a lien ·under the act cited. That this lumber was put into the buildings on the artesian well premises, is too clear to admit of doubt. The fact that a small portion of it was diverted to other uses, can not prejudice the claim of the petitioners, as they delivered the lumber for a specific purpose, on request, on the land of the defendants.

We perceive nothing in the testimony of Read to change the conclusion we reached at the last term. The whole ground was then carefully examined, and we see no reason why we should retrace our steps.

The fact that some of the lumber especially bought for buildings on these premises was diverted by the purchasers to other purposes, can not have the effect to destroy the lien, nor is there any satisfactory evidence that any considerable portion of it was so diverted. To claim an exemption from a lien on this account, the proof of the quantity diverted should be clear. The knowledge of the fact, if it existed, was with the defendants, and the onus was upon them to supply such proof.

Another point made by appellants is, that the note was cancelled. The note was filed in the cause, but the record does not show it was for cancellation. If it was cancelled, then there would be strong equitable grounds for allowing interest on the account, the justice of which had been admitted, and payment vexatiously delayed. Interest on the account would increase the amount of the decree.

The remaining point is, that the Badgers were not entitled to a lien, as provided by the decree.

It appears the Badgers held the bonds of this company, secured by a mortgage on the premises. They attempted to sell these bonds and become themselves the purchasers. This sale, if illegal, but remitted them to their original rights, and did not cancel the bonds. They exist in all their original vigor, and they had a right to set them up for the amount appearing on their face.

There may be a trifle too much allowed the Badgers—it is a mere trifle—and would have been corrected on motion to the court. We will not send the cause back on this account. Appellants saw, or could have seen, the draft of the decree before it was entered, and should then and there, in the Superior Court, sought a correction.

As to the point that these bonds should be surrendered to Shufeldt, it is a sufficient answer to say, his right to demand the bonds can not be asserted until he has paid the debt for which they were pledged. The court in which the bonds are filed can make such order in this respect as justice may require.

Perceiving no error in the record, the decree must be affirmed.

*Decree affirmed.*