OSCAR D. WETHERELL
v.
ALBERT M. JOHNSON *et al.*

*Opinion filed February 17, 1904—Rehearing denied April 6, 1904.*

1. PLEDGE—*holder of collateral may purchase same without breach of trust.* The holder of stock pledged as collateral security for a note may purchase·the stock from the pledger without any violation of his duty, or he may agree with the pledgor to take the stock in satisfaction of the note.

2. SALES—*when failure to read the bill of sale is not ground for relief.* Failure of the vendor to read a bill of sale is not ground for rescission, where he knew and fully understood the contents of the bill and was not deceived in any manner with respect thereto.

APPEAL from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

FRANK A. BINGHAM, (H. W. DIKEMAN, of counsel,) for appellant.

JOHN M. CURRAN, and H. S. MECARTNEY, for appellees.

EUGENE E. PRUSSING, *pro se.*

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Cook county sustained demurrers of the appellees, Albert M. Johnson, Edward A. Shedd, Charles B. Shedd, Eugene E. Prussing, Louis G. Phelps, the National Life Insurance Company of the United States of America, the National Life Building Company and R. E. Sackett, to the amended and supplemental bill filed on August 28, 1903, against them by the appellant, Oscar D. Wetherell. The alleged wrong against which complainant sought relief was the procuring from him on June 3, 1902, of a bill of sale for 9010 shares of stock of said National Life Insurance Company pledged as collateral to his notes, in consideration of the release and

cancellation of the notes. The prayer of the bill was, that the court should cancel the bill of sale and all entries of the transfer in the records of the insurance company, and set aside a deed executed by the insurance company to the National Life Building Company of certain lots in Chicago, and order a re-conveyance of the same and restore complainant to his ownership of said shares. Complainant elected to stand by the bill and the court dismissed it for want of equity.

The bill abounds in charges of wrongful intent and wicked design on the part of some of the defendants to take advantage of complainant and obtain his shares of stock without consideration, in violation of duty and of confidential and trust relations, but those charges are mere matters of vituperation, except so far as they are justified by facts alleged in the bill. There are charges that defendants (except the corporations) wrongfully confederated together to wrongfully take advantage of the confidential relations existing between the complainant and the defendant Prussing, and to wrongfully take advantage of the relation of trustees and *cestui que trust* existing between the complainant and the defendants Edward A. Shedd and Albert M. Johnson, and to wrongfully take advantage of the distressed financial condition of complainant, and his weak physical condition, and his wrought-up, feeble and distracted mental condition, and that in pursuance of said confederacy and design the bill of sale was obtained. These charges also constitute the burden of the argument; but the question whether the court erred in sustaining the demurrers must depend upon the facts stated in the bill, and unless facts constituting fraud are therein specifically set out the decree must be affirmed.

The material facts stated in the bill as a ground for relief are as follows: That complainant was the owner of 9468 shares of the capital stock of the National Life Insurance Company, a corporation with a capital stock

of 10,000 share's, of the par value of $100 each; that he controlled other shares, and controlled the corporation through directors elected to promote his interest and to perform prescribed perfunctory duties as such directors; that the corporation was the owner of the real estate in the city of Chicago described in the bill, otherwise known as the National Life Building; that complainant was indebted for an unpaid balance of $120,000 on a note, with which he had pledged as collateral security 4000 shares of said capital stock; that he owed another note for the principal sum of $100,000, with which was pledged as collateral 5010 shares of said capital stock; that each note contained a power under which the holder could sell and deliver said shares of stock at public or private sale, without notice, for the payment of the note; that the notes were due; that the defendant Prussing was attorney for complainant in matters pertaining to said interests, and especially as to matters relating to the notes and stock, and without complainant's knowledge Prussing was also attorney and legal adviser of the defendants Edward A. Shedd and Albert M. Johnson, the holders of the notes, about the same matters; that complainant was financially distressed, sixty-seven years of age, physically sick and feeble in body, mentally wrought up by the anxieties of business troubles and on the verge of mental collapse; that the shares of stock were worth $500,000 above the liens thereon; that Prussing held before complainant the danger of a sale of the stock by the legal holders of the notes, and gave him to understand that said holders had it in their power to sell the stock and threatened to do so; that complainant, being greatly wrought up mentally and distressed, executed the bill of sale of the stock on June 3, 1902, to defendant Johnson, for the stated consideration of one dollar and the cancellation and release of said two promissory notes; that the complainant relied upon the advice of Prussing, and was influenced thereby to sign the instrument with-

out reading it or having it read to him; that neither the stock certificates nor the notes were present when he signed the bill of sale, and the recital that he received one dollar was untrue; that the notes were not surrendered until after the filing of the original bill, when they were left, on August 12, 1902, at the office of his attorney; that the individual defendants took control of the insurance company and caused the certificates of stock to be surrendered and new ones to be issued, and voted the stock and were elected directors; that afterward they formed the corporation the National Life Building Company, and caused a deed to be executed by the insurance company conveying the National Life Building to the new corporation; that the conveyance was in consideration of a conveyance of capital stock of the building company to the insurance company, and that in December, 1902, complainant caused a demand to be made upon defendants for the funds, money, stock, bill of sale and other property belonging to him, which demand was refused.

There are no facts stated in the bill which would constitute a fraud. It is averred, as matter of law, that the relation of the defendants Albert M. Johnson and Edward A. Shedd to the complainant was that of trustees; that the power to sell the stock pledged as collateral was in the nature of a trust, and that they were therefore disqualified from dealing with the subject of the trust to their own advantage. A pledge is trust property and the character of a pledgee is that of a trustee. (*Union Trust Co.* v. *Rigdon,* 93 Ill. 458.) The law does not permit a pledgee to purchase the pledge at his own sale except upon an agreement with the pledgor, because he has a duty to perform in relation to the property inconsistent with the character of a purchaser, and such a sale is voidable at the option of the pledgor. (22 Am. & Eng. Ency. of Law,—2d ed.—891; Cook on Stock and Stockholders, sec. 479.) The facts alleged in this case do not

bring it within the rule, since there was no attempt by either Johnson or Shedd to purchase at his own sale or to take advantage of the trust relation for his own benefit. Johnson could lawfully purchase the shares of stock from the complainant without any violation of duty, or they might agree that Johnson should take the stock in satisfaction of the notes, and that was what was done. It is alleged that Prussing was disqualified from purchasing the stock because he was the attorney and confidential adviser of complainant; but it is not alleged that he did purchase the stock, or that any purchase was made through him, or that he had any interest in the purchase by Johnson. There is no showing whatever that the advice given by Prussing was not good and given in good faith. Complainant knew that the holders of the notes had power to sell the stock pledged as collateral, that the notes were past due, and that there was danger of the loss of the stock to him through the exercise of that power, and therefore the fact that Prussing advised him of such danger does not tend to show fraud. There is no averment in the bill that anything Prussing told the complainant was untrue, but, on the contrary, every statement made is shown by the bill to have been true. There is no fact stated which shows either mental or physical incapacity of complainant to enter into the contract or sell his stock, and although complainant says he did not read the bill of sale or have it read to him, the bill shows he fully understood it and was not deceived, in any manner, as to its contents. There is no complaint that he did not understand the nature of the transaction and the legal effect of the bill of sale. It is alleged that the stock was worth $500,000 more than the liens upon it; but that is not an allegation of market value, and there is no averment that complainant could have sold the stock for more than he got for it, that he was kept in ignorance of its value, or that he did not know exactly what it was worth. No explanation is offered why com-

plainant did not sell the stock for the great amount of money which it is alleged to have been worth, or that he was deceived or prevented in any manner from realizing its full value. When the charges of wrongful motives, unsupported by facts, are eliminated, the bill is clearly insufficient to require an answer, and there was no error in sustaining the demurrers.

The decree of the circuit court is affirmed.

*Decree affirmed.*