## The Sargent Company v. William Baublis et al.

### Gen. No. 12,604.

1. MOTION TO DISMISS FOR WANT OF EQUITY—*when will not be allowed.* A motion to dismiss a bill for want of equity appearing upon its face, being treated as a demurrer, will not be allowed, unless it is clear that no amendment could help the bill.

2. EQUITY—*jurisdiction of, to grant relief from judgment arising upon fraud.* Courts of equity have jurisdiction to enjoin the collection of judgments at law and grant new trials on grounds of fraud, accident or mistake, when it would be against conscience to permit the parties to enforce such judgments.

3. FRAUD—*when bill of complaint sufficiently avers fraud in procuring judgment.* A bill of complaint is sufficient to confer jurisdiction, which shows that a judgment sought to be enjoined was obtained by perjured testimony and that such fact, and the means of showing it, came to the knowledge of the defendant too late to be established in the trial at law.

Bill for injunction. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Reversed and remanded. Opinion filed July 13, 1906.

**Statement by the Court.** This appeal is from a decree of the Superior Court dismissing the bill of complaint as

amended for want of equity and for want of jurisdiction, on motion of defendants.

The Sargent Company, a corporation, filed its bill against appellees to restrain collection of a judgment at law, alleging that " William Baublis was injured on May 26, 1902, while employed by the complainant as a servant; that the injury suffered by him was a fracture of one of his legs, which was the only injury ever suffered by him and the only claim he ever had against the Sargent Company. On May 27, 1902, complainant offered Baublis $100 to adjust and settle his claim for injuries, and he accepted that amount in full settlement and satisfaction of his supposed claim for damages, and the amount was paid by complainant and accepted by him as a settlement and adjustment of his claim. On the payment of that sum Baublis executed a release which is set out. On May 28, 1902, an action was brought under the name of William Baublis on the law side of the Superior Court of Cook County to recover damages because of the same injury afore described, and the case coming on for trial on April 27, 1903, before a jury, complainant offered in evidence the release aforesaid, which was admitted in evidence and read to the jury and on the trial F. C. Swingle, A. H. Parker and Stanley Idzikowski each testified they were present when Baublis signed the release; that he signed it, that he was the same person as the plaintiff in the case, that as agents of the Sargent Company they paid him $100 in settlement of his claim for the injuries aforesaid; that he received the money in settlement, that at that time he was conscious and knew what he was doing and placed the money he received under his pillow; that the complainant also in the law action introduced the evidence of Joseph Reese, attending physician, who testified that on the day of the settlement Baublis was not unconscious at any time during the day.

On rebuttal on trial of the case William Baublis testified that he did not remember of any men coming to see him at the hospital, that he did not put any money under his pillow, never made any mark on any paper like that (refer-

ring to the release), did not understand at any time while in the hospital that he made a settlement of his claim, that he never saw any of the witnesses who testified that they witnessed him sign the release, and that he was unconscious at the time the release was supposed to have been signed. Joseph Powlowski testified that he saw the plaintiff some time on May 27th, but did not see any money there, and that he tried to talk to plaintiff, but could not get anything out of him.

The bill further alleges that the foregoing was all the evidence introduced in the case in any way relating to the release or the conditions attending execution of the same, and that there was no other evidence whatever introduced in any way affecting the release or tending to support the testimony of Baublis, and that the evidence of Baublis aforesaid was wholly false and untrue and fraudulently given with intent to defraud and cheat the complainant, and that in so testifying Baublis committed perjury. The bill further alleges that a verdict was rendered for plaintiff in that case and that in sole reliance upon the false testimony of Baublis a verdict for plaintiff was returned, the court denied the motion for new trial in the law case made by the complainant, and in sole reliance thereon a judgment was rendered for $3,000 and affirmed on appeal to the Appellate and Supreme Courts.

The bill further alleges that complainant was served with a supposed assignment to Morse Ives of the verdict, and any judgment that might be rendered in the law action. The bill alleges that no consideration of any kind was paid for the assignment and that Baublis did not know the contents of the supposed assignment when he signed it, and that the person to whom the same was assigned was Morse Ives, one of his attorneys, who had full knowledge of the false and fraudulent character of the testimony of Baublis.

The bill further alleges that complainant learned, for the first time after said cause was affirmed in the Supreme Court, which order of affirmance was April 8, 1905, that Baublis had sworn falsely on the trial and perjured

himself (Baublis), and that since the affirmance in the Supreme Court he has stated and admitted to various persons that his evidence upon the trial of the cause, as set out in the bill as having been given by him upon the trial, was false and untrue, that he did remember the agents of the complainant calling at the hospital, that he did receive $100 from them and knew it was in settlement of his injuries and knew it was in settlement of his claim for injuries for which the case was prosecuted, and that he has admitted and stated that he made his mark on the release, and signed the same, and that he knew he was settling his claim for damages therefor, and that he placed the money which he received under his pillow, and that he has stated and admitted to various persons that he did testify falsely and perjure himself upon the trial of the cause with intent to cheat the complainant, and that he was procured to do so by one Frank Golubicki.

The bill further alleges that complainant diligently searched to secure evidence that plaintiff signed the release and was conscious, that he settled his case for $100 and accepted that amount as a settlement of his case, and that the complainant never found any evidence except that which was introduced on the trial of the case, as set forth in the bill, and that complainant never learned or discovered that the testimony of Baublis was untrue and perjured until after the affirmance of the case in the Supreme Court on or about the months of May and June, 1905.

The bill further alleges that said Baublis never did prior to April, 1905, make any statement or admission except to his co-conspirators that his testimony on the trial was false, untrue and perjured, nor state or admit that he remembered that the agents of complainant called upon him at the hospital, and that he received $100 from them and knew that it was in settlement of his claims for injuries, and that he made his mark on the release and signed it, and knew he was settling his claim for damages.

The bill further alleges that such statements and admissions never were made by William Baublis prior to the

Sargent Co. v. Baublis.

month of April, 1905, except to his co-conspirators, who would not divulge any such facts to the complainant.

The bill alleges that said Baublis did agree with complainant to release the claims against it for the injury therein described, and did sign the release therein set forth on the date therein mentioned, and that the complainant did pay the sum of $100 to Baublis, and he accepted and received it as a payment and settlement of his claims; that he was not at the time unconscious, but was entirely conscious, and was informed and knew the conditions of the release and signed it, knowing that thereby he signed away any right of action he might have against the complainant, and that all the evidence introduced on behalf of Baublis on the trial of the law action to the contrary was false and untrue, and so known to the defendants at the time to be.

The bill further alleges that Baublis conspired with one Frank Golubicki, who officed at room 605 Atwood building, in the same office with Morse Ives and Ernest Krieg, attorneys for the plaintiff. That before the trial of the case before Judge Stein and the jurors aforesaid, said Golubicki told Baublis to swear upon the trial of the case that he, Baublis, had no recollection of having settled the case, did not sign any release or receive any money, and that he was unconscious at the time, and that by so perjuring himself he could secure a large judgment and a large sum of money from the complainant, and that Baublis did testify as so directed, and that upon this false and perjured testimony alone the verdict and judgment and affirmances were had.

The bill further alleges that Baublis had on various occasions admitted that his testimony was false and untrue, and stated, as in the bill set forth, that the facts were not as testified to by him, and that he perjured himself pursuant to the instructions of Golubicki.

The bill also contains the charge of confederation and conspiracy by the defendants, praying that their co-conspirators might be made defendants when discovered; that the defendants threaten to issue an execution, or have issued one, and unless restrained by the court will cause an execu-

tion to be levied upon the property of the complainant and
proceed to a collection of the judgment; that said Baublis
is irresponsible and insolvent, and if collection were made
the same could not be recovered back; that Baublis intends
to leave the country and go to Lithuania should he collect
the judgment or any part of it; that the release is a com-
plete bar to any recovery by Baublis, and that the law
court would have so held but for the false, untrue and per-
jured testimony of Baublis.  The prayer of the bill is that
the defendants may be enjoined from collecting the judg-
ment and that the judgment may be held for naught, and
that an injunction may issue against the defendants re-
straining them, their agents, attorneys, etc., from causing
execution to issue and from collecting the judgment or
taking any action thereunder or enforcing the same, and
that injunction may issue without notice restraining the de-
fendants and upon a hearing that the injunction may be
made permanent.

Prayer for general relief, for process, waiver of answer
under oath, etc.

The bill is sworn to and a recommendation that the in-
junction issue written thereon by the master in chancery."

ELBRIDGE HANECY, F. J. CANTY and R. J. FOLONIE, for
appellant.

DAVID K. TONE, for appellees.

MR. PRESIDING JUSTICE SMITH delivered the opinion of
the court.

The only question presented on this appeal is the suf-
ficiency of appellant's bill of complaint to entitle it to the
relief prayed.

Under the chancery practice in this state, a motion to
dismiss a bill in equity may be made properly by the de-
fendant on the ground that there is no equity apparent on
the face of the bill, or that the court had no jurisdiction,
though such is not the generally approved chancery prac-
tice.  In such cases the motion is treated as a general de-

murrer, admitting all the facts well pleaded by the bill. A bill will never be dismissed upon such a motion, unless it is clear that no amendment can help it. Such is the necessary result of treating the ·motion as a demurrer to the bill. Grimes v. Grimes, 143 Ill. 550, and cases there cited.

From the record it appears that the Superior Court dismissed the bill "for want of jurisdiction in equity to grant the relief therein prayed, and for want of equity."

The first question then is as to the jurisdiction of courts of equity to grant relief from judgments when the same rest upon the fraud of the party securing the judgment, whereby he has secured an illegal and unconscionable advantage over the party seeking relief who is free from negligence. This question has been so frequently adjudicated upon that little need here be said. In Nelson v. Rockwell, 14 Ill. 375, the court said: "Fraud is one of the broadest grounds of equity recognized by the courts, and relief may be obtained against a judgment at law, although the party might find a remedy in a court of law. It is the fraud which gives jurisdiction to this court, and the aggrieved party is not obliged to resort to another tribunal possessed of less power and appliances to ascertain the truth and grant the requisite remedy, although the other tribunal may have jurisdiction."

To the same purport are Babcock v. McCamant, 53 Ill. 214; Harding v. Hawkins, 141 id. 572.

In Foote v. Despain, 87 Ill. 28, the court said: "We understand the rule to be well settled that where a judgment has been obtained by fraud, accident or mistake, courts of equity have jurisdiction to grant a new trial at law, or otherwise relieve against the judgment, unless the party against whom the judgment has been rendered is guilty of negligence."

Without stopping to quote from other authorities or even to cite those at our hands we unhesitatingly hold that courts of equity have jurisdiction to enjoin collection of judgments at law and grant new trials, on grounds of fraud,

accident or mistake, when it would be against conscience to permit parties to enforce such judgments.

The remaining question is whether the bill of complaint shows grounds for equitable relief.

In the consideration of this question we must take the allegations of the bill as true. These show that appellee Baublis fairly and understandingly agreed with the appellant to release his claims against appellant for the injury, which was a fracture of one of his legs, for $100, and that he signed the release and appellant paid him the money, which he accepted, well knowing at the time that the money was paid to him by appellant in full satisfaction and discharge of all liability on its part for the injuries suffered by appellee. The bill further avers that appellee Baublis afterwards conspired with one Golubicki, who occupied the same office with the attorneys for appellee, to secure a large judgment against appellant for damages for these same injuries by swearing falsely upon the trial of the case that he (Baublis) had no recollection of having settled the case, and that he did not sign the release or receive any money from appellant in consideration thereof, and that he was unconscious at the time the release was given and the money paid; and that Baublis did so falsely testify on the trial of the cause, at the direction of said Golubicki; and that upon this false and perjured testimony alone the verdict and judgment were secured, and the affirmances thereof in this court and in the Supreme Court were had.

The bill then shows that appellant diligently searched before the trial to secure evidence that Baublis signed the release and received the money when he was conscious of what he was doing and of the effect thereof, and it failed to learn or discover that Baublis had knowingly testified falsely to secure the judgment until after the affirmance thereof in the Supreme Court; that Baublis never made any statement or admission except to his co-conspirators that his testimony on the trial was false and perjured prior to April 1905, and that his co-conspirators would not divulge any such facts to appellant; but that since said

affirmance Baublis has on various occasions admitted that his testimony was false, and that the facts were not as testified to by him, and that he perjured himself pursuant to the instructions of Golubicki. The bill then gives the names of the persons to whom Baublis made the statements and admissions, and their affidavits as to such statements by Baublis are attached to the bill as exhibits.

It is clear from the averments of the bill that appellee Baublis perpetrated a fraud upon appellant by means of his own perjured testimony, and that the fraud was practiced in the very matter of obtaining the judgment; and it must be regarded as perpetrated upon the court as well as upon appellant. The fraud shown could not have been litigated in the action in which the judgment was obtained, nor was it a matter of which appellant could avail itself in the court giving judgment. The case stated in the bill is thus brought squarely within the rule stated in Marine Insurance Co. v. Hodgson, 7 Cranch, 332, and Black on Judgments (2nd Ed.), sections 356 and 370, and Storey's Equity Jurisprudence (13 Ed.), sections 879, 885, 887, 896; and Harding v. Hawkins, *supra*.

Appellees by appearing and moving for a dismissal of the bill admitted that Baublis received the money from appellant which appellant paid to him in full settlement of his claim for damages, and that he settled his case with full knowledge of the facts and of the further fact that he was making an adjustment of his claim; and that he testified falsely on the trial at the solicitation of Golubicki, and also that all his testimony on the trial of the law case denying the execution of the release, and as to his state of unconsciousness when he received the money and executed the release was wholly false and perjured. And yet, while admitting all this, appellees ask a court of conscience to permit them to retain a judgment which was thus secured by fraud and perjury perpetrated upon the court as well as upon appellant. If a court of equity can tolerate even such a plea, and much more sustain it, the court should be renamed. Eliminat-

ing the perjured testimony, which by the demurrer is admitted to be false, the release is left in full force and effect as an absolute bar to the right to recover. Hence, by the admissions made by appellees, the judgment rests solely upon the perjured testimony. Should a court of equity by denying relief put a premium on admitted perjury? We think the proposition is monstrous. Cox v. Paxton, 17 Vesey, Jr., 329.

It is urged on behalf of appellees that there must be an end to litigation; and that the alleged newly discovered evidence tends only to discredit the testimony of Baublis, and such evidence is uniformly held in this state to be insufficient even upon a motion for a new trial. On the contrary, we think the evidence is not merely cumulative, but it is independent evidence, dissimilar in kind to that offered on the trial of the case at law. It is direct evidence of admissions by appellee Baublis in conflict with his evidence on the trial of that case. It is not impeaching evidence alone, but original evidence bearing directly upon the issue as to the settlement and release. Preston v. Otey, 88 Va. 491. If presented to the court which tried the case on a motion for a new trial, it would have been good ground for sustaining the motion. Fletcher v. People, 117 Ill. 184; Waller v. Graves, 20 Conn. 311; Andrews v. Mitchell, 92 Ga. 629.

The motion to dismiss should have been overruled and the defendants required to answer. The decree is reversed and the cause is remanded.

*Reversed and remanded.*