**Robert D. Sheppard, Appellee, v. Berkshire Life Insurance Company et al., Appellants.**

**On Appeal of Orville P. Curran.**

**Gen. No. 15,439.**

**Robert D. Sheppard, Appellee, v. Berkshire Life Insurance Company et al., Appellants.**

**On Appeal of Berkshire Life Insurance Company.**

**Gen. No. 15,445.**

**Consolidated for Hearing.**

1. CHANCERY—*when has jurisdiction to entertain appeal to determine right to surplus arising from foreclosure sales.* If a mortgagee is secured with respect to its indebtedness by several mortgages, one of which is collateral in character, and conducts foreclosure proceedings and sales under such mortgages, receiving more than sufficient to satisfy all claims, chancery has jurisdiction to

entertain a proceeding to ascertain the surplus and to distribute the same among the parties entitled thereto.

2. RES JUDICATA—*when decree of foreclosure does not bar bill to determine right to surplus arising from foreclosure sales.* If several mortgages are foreclosed by a mortgagee to obtain satisfaction of his indebtedness the decrees entered therein are not *res judicata* of the right of the mortgagor, who had transferred his equity prior to the institution of such proceedings and who was made a party thereto, subsequently to file a bill to determine his right to a surplus arising from the sales made upon the ground that one of the mortgages foreclosed was merely collateral security, inasmuch as in the foreclosure proceedings no issue was made as to such mortgage being collateral in character.

3. LACHES—*when does not bar bill to determine right to surplus arising from foreclosure sales.* A delay of a year will not bar such a proceeding where there is no evidence justifying the conclusion that it would be inequitable to allow the complainant to proceed.

4. MORTGAGES—*obligations of grantee taking subject to mortgage.* Whenever the mortgage debt forms a part of the consideration of the purchase price, although the purchaser has not entered into covenant or agreement to pay it, he is bound to the extent of the property to indemnify the grantor. The law implies a promise to that effect from the nature of the transaction, but this obligation to indemnify does not, in the absence of contract, extend to attorney's fees and expenses incurred in prosecuting and defending litigation.

Bill in chancery. Appeal from the Superior Court of Cook county; the Hon. ALBERT C. BARNES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Reversed and remanded. Opinion filed May 5, 1911. Rehearing denied May 19, 1911. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** These two cases, consolidated for hearing in this court, are separate appeals by Orville P. Curran and the Berkshire Life Insurance Company, severally, from a decree of the Superior Court of Cook county, in favor of Robert D. Sheppard, in a suit brought by him against the Berkshire Life Insurance Company, in which he made Curran a party defendant, and in which Curran filed a cross-bill. The bill filed by Robert D. Sheppard (appellee in this court), avers that prior to September 17, 1904, Curran was the owner of certain real estate, known as lots 1, 2, 3 and 4, in O. P. Curran's sub-

division, in the city of Chicago; that in September, 1892, Curran borrowed of the Berkshire Life Insurance Company the sum of $60,000, for which he gave his three promissory notes, each for $20,000, with interest coupon notes attached, and to secure which Curran executed three several mortgage deeds, each to secure one of the $20,000 notes, with interest, and conveying lots 2, 3 and 4 respectively; that these several principal notes became due September 27, 1902, whereupon, after some negotiations, the Berkshire Life Insurance Company and Curran entered into an extension agreement dated March 27, 1903, by which the time for the payment of the said three several notes was extended for five years from September 27, 1902; that in consideration of this extension Curran executed and delivered to the Insurance Company his four additional promissory notes, aggregating $15,000, all of which said notes were secured by a mortgage on all of lots 2, 3 and 4, and upon lot one except the north fifty-six feet thereof. This mortgage was a collateral mortgage, given as further security for the payment of the notes already secured by mortgages on lots 2, 3 and 4.

It was further provided in the extension agreement that if Curran should pay said collateral notes promptly when due he should have the right to pay the balance remaining on the three $20,000 notes on or before September 27, 1907, and the rate of interest on said last mentioned notes should be five per cent. instead of seven per cent., as originally provided; that when said collateral notes were paid the amounts thus paid should be applied as payment on the three principal notes in the ratio of $5,000, $6,000 and $4,000, respectively, upon the notes secured by mortgage on lots 2, 3 and 4 respectively.

The bill further avers that on September 17, 1904, Curran conveyed said lots 1, 2, 3 and 4 to William J. Anable, who, by the terms of the warranty deed under which he took, assumed and agreed to pay said mort-

gages; that on or about the same day Anable conveyed all of said lots to the complainant Sheppard by warranty deed, which specified that the conveyance was subject to the above mortgages, but that complainant did not assume and agree to pay any of them.

It is further averred that default was made in payment of interest on the three promissory notes, and on December 6, 1904, the Insurance Company filed three several bills for the foreclosure of said several mortgages on lots 2, 3 and 4, respectively, as a result of which, by appropriate decrees, the lots were sold, leaving a deficiency aggregating $5,000.

It is further averred that on March 22, 1905, the Insurance Company filed its bill to foreclose the last mortgage covering a part of lot 1, etc.; that complainant, Sheppard, was made a party defendant in all of said foreclosure suits, but that, relying upon said agreement between the Insurance Company and Curran, he believed that the Insurance Company was seeking only to realize the sum of $60,000, and interest thereon, being the amount of the principal notes secured on lots 2, 3 and 4, and so believing that the last encumbrance was held by the Insurance Company only as collateral security for the other three obligations, he entered no appearance in the suit to foreclose it, but allowed himself to be defaulted.

It is further averred that in this last foreclosure suit the property was sold by decree of court on November 2, 1906, to the Insurance Company for $19,-751.22, of which amount $266.50 was deducted for Master's fees and $816.05 for the fees of the solicitors for the Insurance Company and costs, thus leaving a balance of $18,668.67; that on November 27, 1905, the Insurance Company purchased a prior outstanding mortgage (hereinafter referred to as the Hair mortgage), which represented a total indebtedness of $1,109.03; that accordingly the Insurance Company was entitled to deduct from said sum of $18,668.67 said sum of $1,109.03, plus the ag-

gregate of the deficiency upon the sale of lots 2, 3 and 4 ($5,000), and that the complainant, Sheppard, is entitled to the difference.

The Berkshire Life Insurance Company and Orville P. Curran filed separate answers to the bill, in each of which the defendants admitted most of the allegations of the bill.

The Berkshire Life Insurance Company claimed in its answer that Sheppard had been served and defaulted in the suit brought to foreclose upon lot 1, and that Curran offered no evidence in support to sustain the answer filed by him; that the Master found in that proceeding that the Insurance Company was the legal holder and owner of the notes and mortgage; that it was the only bidder, and neither delivered to nor received from the Master any money as the result of the sale, and insisted that Sheppard was estopped to contend that this mortgage was collateral only, and to claim from it any of the proceeds. It further averred that neither Sheppard nor Curran had offered to redeem from the sales or to pay the indebtedness due to it.

After filing his answer, Curran filed a cross-bill claiming, that from the surplus of $12,559.64 which Sheppard claims from the Insurance Company, he (Curran) should be paid a considerable sum. He averred that Sheppard derived his interest in the property solely through a deed to him from William J. Anable, dated September 16, 1904; that Anable acquired title from Curran and wife by deed dated September 17, 1904, in consideration of which, and as a part of the consideration therefor, Anable expressly assumed and agreed to pay Curran's indebtedness; that the deed to Anable was in terms subject to the three mortgages to the Berkshire Life Insurance Company above mentioned, to taxes and assessments of 1903, and a trust deed for $938.50 to Hair, as trustee, and also to a trust deed for $8,000 to Howell, as trus-

tee, all of which by the terms of the deed to him Anable assumed and agreed to pay; that by reason of the failure of Sheppard and Anable to make payments when due the Howell trust deed was foreclosed by Matilda McLean, its owner, and that on May 21, 1907, when the property was sold under this foreclosure proceeding, in which both Sheppard and Anable were defendants, a deficiency decree was rendered against Curran (whose liability was in the nature of a surety), for $1,175.63, which deficiency should be paid by Sheppard, who is a mere volunteer under the deed from Anable; that Anable is insolvent; that Curran is entitled to be subrogated to the rights of Anable against Sheppard in said surplus.

In his cross-bill Curran prays that he may be reimbursed from said surplus, not only for the $1,175.63, the amount of the deficiency decree, but also for $491.25, which amount he was required to pay for attorney's fees and costs in a suit at law against him by the Berkshire Life Insurance Company, upon his notes which Anable had assumed and agreed to pay, but which, on account of the default of Anable and that of Sheppard, the property was obliged to pay, and also for his defense in the several foreclosure proceedings, above referred to, covering lots 1, 2, 3 and 4.

In its answer to the cross-bill of Curran The Berkshire Life Insurance Company admitted the various mortgages, and the suits, and the purchase by it under the last foreclosure for the amount stated; that no money passed between it and the Master, but that the Master had given to it a Master's certificate of sale for the property, and that by virtue of the decree Curran and Sheppard are estopped.

Curran, by amendment to his cross-bill then alleged that in the transactions, resulting in the conveyance of lots 1, 2, 3 and 4 to Anable and from Anable to Sheppard, that Anable acted as the agent of Sheppard, and that Sheppard took the deeds to the lots with full knowledge of the assumption by Anable of the various

mortgages and trust deeds, and that no actual consideration passed between them.

Sheppard answering the cross-bill denied that Curran was put to any expense in defending the law suit in question because of any default on his part or that of Anable's, or that he should have protected Curran from said suit; denies that he is a volunteer, and alleges that Curran gave no notice to Sheppard of the suit at law brought against him, and that the defense thereto was of no benefit to Sheppard; that the deficiency decree of .$1,175.63 entered against Curran was in another cause, wherein the property and trust deed were different from those referred to in the bill filed in this cause, and also that Curran does not allege he has paid the deficiency.

The court dismissed the cross-bill of Curran, and decreed that the Insurance Company should pay to Sheppard the surplus $12,559.64, as prayed in the bill.

The Berkshire Life Insurance Company contends that the court below erred in its findings and decree against it, and in favor of Sheppard, and insists that the court below should have dismissed the bill for want of equity, and because Sheppard had an adequate remedy at law.

Curran contends that the court below erred in dismissing his cross-bill, and in not allowing his claims, and providing for a subrogation as to a part of the surplus fund, and in not protecting him against the deficiency decree in the foreclosure of the Howell or McLean trust deed.

Sheppard assigns cross-errors, contending that the court below erred in not declaring void that portion of its decree in the case of the last foreclosure, which purports to approve that part of the Master's report referring to the distribution and payment to the Berkshire Life Insurance Company of $18,668.67; also in finding that the charge of fraud against the Berkshire Life Insurance Company, or its agents or solicitors, was not sustained.

DENT & JACKSON, for appellant, Orville P. Curran.

THOMAN, HARNWELL & PEARSONS and EDWIN WHITE MOORE, for appellant, Berkshire Life Insurance Company.

JOHN H. S. LEE, for appellee.

MR. JUSTICE BALDWIN delivered the opinion of the court.

Considering at the outset the contention of the Berkshire Life Insurance Company, that the case was not one within equitable jurisdiction, because there was an adequate remedy at law, it seems clear to us that in no other forum could the questions involved be properly disposed of. This suit is, in effect, a bill of review as to that portion of a decree previously entered, which purported to approve a part of the Master's report referring to the disposition and payment to the Insurance Company of the proceeds of a foreclosure sale.

In the last of the four foreclosures the Master reported his distribution to the Insurance Company of the entire proceeds of the sale, and this report was confirmed. This suit attacks that portion of the report, and seeks to have the court modify the order or decree so as to show that the Insurance Company was not entitled to the surplus, because the last foreclosure was on a mortgage which was merely collateral to an existing indebtedness, and that the act of the Insurance Company in securing payment to itself of this surplus constituted in law a fraud upon complainant and the court.

Upon the case made by the bill, the action of the Company in getting the court to approve the payment to and the retention by it of more than $12,000, after it had been fully paid the amount owing to it, together with all costs and expenses would, even if free from wrongful intent, constitute such fraud in law as to con-

fer jurisdiction upon a court of equity.    Sargent Co.
v. Baublis, 127 Ill. App. 631.

Besides, upon the allegations of the bill and cross-
bill, the Company is in legal contemplation a trustee,
with funds in its possession, which are subject to a
trust in favor of others, thus imposing a duty upon it
like that of pledgee toward the owner.    Colebrook on
Collateral Securities, sec. 87; Wetherell v. Johnson,
208 Ill. 247; Union Trust Co. v. Rigdon, 93 Ill. 458;
Iron Co. v. Brick Co., 82 Ill. 548.

The Berkshire Life Insurance Company had three
separate mortgages upon lots 2, 3 and 4, respectively,
and a subsequent additional mortgage upon a part of
lot 1, and covering also these three lots, and it clearly
appears that this last was merely collateral. The Com-
pany had the undoubted right to proceed at the same
time to foreclose both the principal and the collateral
security.    Colebrook on Collateral Security, Par. 113;
Furness v. Union Nat. Bank, 147 Ill. 570.

The sale upon the last or collateral mortgage having
brought more than the amount due the Company, the
surplus belonged not to it, but to Sheppard, the owner
of the equity of redemption, or, under the circum-
stances in this case, to him and to Curran.    Colebrook
on Collateral Sec., par. 111, etc.; Hopkins v. Hemm,
159 Ill. 416, 418.

The fact that the Berkshire Life Insurance Com-
pany was itself the purchaser at the foreclosure sale
does not change the situation, it being the same as if
a third party had thus purchased.    The Company
thereby became obligated to pay the amount bid for
the property.    Haigh v. Carroll, 209 Ill. 576, 580;
Lightcap v. Bradley, 186 Ill. 510, 524.

From the whole record, including the instructions
given by the Berkshire Life Insurance Company to the
Master, as to the amount due it, we cannot say, that
Sheppard and Curran are precluded from asserting
and relying upon the fact that the last mortgage was
merely collateral, and though they might not prevent

its foreclosure, they were clearly entitled to prevent more than one satisfaction of the Company's claim. Nor can we agree with the contention made by the Insurance Company that the record in the last foreclosure case constituted an adjudication to the effect that the amount shown by the decree was justly owing to it, and that the foreclosure was entirely independent of, and bore no relation to the other foreclosure suits, which would be binding upon Sheppard and Curran. No issue was presented by the pleadings in that case which made it a material issue, so far as the right of foreclosure was concerned, as to whether the mortgage was or was not a collateral one. Russell v. Epler, 10 Ill. App. 304; Voge v. Breed, 14 Ill. App. 538, 542. Nor do we think the relief sought in this bill is barred by laches. The order of distribution complained of was entered December 12, 1906, and the bill herein was filed December 26, 1907. No circumstances are shown in the evidence justifying a conclusion that it would be inequitable to allow complainant to proceed in his effort to procure the relief prayed for.

We are satisfied from the entire record that the Berkshire Life Insurance Company is not entitled to retain the balance or surplus of $12,559.64, but that it equitably belongs to Sheppard, or to Sheppard and Curran.

As between Sheppard and Curran, the contention of Curran is, in effect, that Sheppard acquired title to the property subject to a distinct and clear charge upon it; that if he held the lots now they would be subject to the encumbrance for which, as between Sheppard and Curran, the property would be primarily liable, and accordingly that the surplus fund of $12,-559.64, which stands in lieu of the property, is likewise so charged.

In September, 1892, Curran was the owner of lots 1, 2, 3 and 4. He then mortgaged lots 2, 3 and 4, severally, to secure $20,000 upon each. These several mortgages were extended by an extension agreement,

dated March, 1903, at which time he gave, as collateral thereto, a fourth mortgage covering these three, and a portion of lot 1, except the north fifty-six feet thereof. In September, 1892, he had encumbered the north fifty-six feet of lot 1 by a trust deed to Hair, trustee, (which was subsequently acquired by the Berkshire Life Insurance Company), and on September 20, 1893, the same property was conveyed to Howell, trustee, to secure $8,000, with interest, owing to Matilda Mc-Lean.  Then in September, 1903, Curran conveyed all of lots 1, 2, 3 and 4 to Anable, subject to all these encumbrances, which by the terms of the warranty deed to him Anable expressly assumed and agreed to pay.

Sheppard acquired the property with notice of the encumbrances upon it, and the conveyance to him, made practically contemporaneously with the deed to Anable, was expressly subject to them.  Therefore, his equity of redemption, as it is called, was the ownership of whatever there should be left of the property after these liens had been paid, and Sheppard should not be allowed to take the fund in its entirety to the exclusion of Curran.  To allow this would be inequitable.  Chicago D. & V. R. R. Co. v. Field, 86 Ill. 270, 273; Home Savings Bank v. Bierstadt, 68 Ill. App. 656, 660.  The law is clear, that whenever the mortgage debt forms a part of the consideration of the purchase, although the purchaser has not entered into any covenant or agreement to pay it, he is bound *to the extent of the property* to indemnify the grantor.  The law implies a promise to that effect from the nature of the transaction.  1 Jones on Mortgages, Par. 751, with citations.

. Curran should be protected against the Howell trust deed, in the foreclosure of which a deficiency decree of $1,175.63 against him was entered on May 20, 1907, in the foreclosure suit brought by Matilda McLean. In other words, Matilda McLean should equitably obtain payment of her claim from the fund.  Hempstead v. Watkins, 6 Ark. 317; Marsh v. Pike, 10 Paige, 595.

Curran also claims that he should be reimbursed the

sum of $491.25, that being the amount paid out by him in part in defending a suit at law, prosecuted against him by the Insurance Company, upon some of the notes secured by the collateral mortgage, and in part for his defense in the four foreclosure suits. The record shows that the amount claimed by Curran is a reasonable amount, if the property is subject to this charge.

Curran bases his contention upon the ground that since the property, and, because of the sale, now the fund, is primarily liable for the indebtedness, he should be protected against all costs and expenses incurred by him by reason of the failure of Anable and Sheppard to pay the notes in question. If they had been promptly paid, he would not have been sued, and compelled to incur this expense.

We do not find any sufficient authority to sustain this contention. We are holding, in this case, that the fund is liable as a principal for the payment of the original indebtedness, with interest, but it does not appear that, in the conveyance to Anable, in which he assumed and agreed to pay the encumbrances therein stated, there was any clause or covenant by which Anable agreed to indemnify Curran, his grantor, and save him harmless from any suits which might be brought against him on account of his having given the original notes and mortgage. Such a liability could only be created by contract. In any event, Sheppard should have been notified and asked to defend by Curran, and this was not done.

The decree of the court below is reversed and the cause remanded, with instructions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded.*