No. 28,876.

W. N. CALKINS, Trustee in Bankruptcy for L. D. HADLEY, a Bankrupt, *Appellant*, v. ELLA HADLEY, *Appellee*.

(281 Pac. 919.)

Opinion filed November 9, 1929.

*K. M. Geddes,* of El Dorado, for the appellant.

*L. J. Bond* and *R. T. McCluggage,* both of El Dorado, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an action by W. N. Calkins, as trustee in bankruptcy, to set aside a conveyance of land from L. D. Hadley to his wife, Ella Hadley. The transfer was made on February 1, 1924, and on July 19, 1926, a petition in bankruptcy was filed upon which L. D. Hadley, in the latter part of the month, was adjudged a bankrupt. A number of judgments had been rendered against L. D. Hadley, aggregating more than $70,000, and it was made to appear that the assets of the estate would pay but a small part of his indebtedness. As shown, the transfer of the land was made about two and one-half years before Hadley was adjudged a bankrupt, but plaintiff alleged and contends that the conveyance was made with the intention to delay and defraud the creditors of L. D. Hadley, and to place the property beyond the reach of his creditors. Ella Hadley answered denying that the transfer was made to delay

or defraud creditors in the collection of their debts, that it was not made as a gift or without consideration, but was made in payment of an acknowledged indebtedness actually owed by her husband to her. When the trial came on the court submitted questions of fact involved in the issues to a jury called to act in an advisory capacity and the following findings were made:

"Q. 1. Do you find, at the time that L. D. Hadley made the deed in controversy to his wife, he was indebted to her in a sum substantially equal to the value of the property so deeded to her? A. Yes.

"Q. 2. Do you find that he deeded said property to her for the purpose of paying his indebtedness to her? A. Yes.

"Q. 3. Do you find that L. D. Hadley made said deed to his wife in good faith and for the purpose of paying her an indebtedness which he in reality owed her at that time? A. Yes."

These findings were approved and adopted by the court as its own and judgment accordingly entered for the defendant. Plaintiff appeals, and is insisting that the findings and judgment are not supported by the evidence.

It is conceded that evidence was offered in support of the judgment of the court, but he insists that it was not the character of proof necessary to uphold a transfer from a husband to a wife in which strict proof is required showing that the transaction was fair and clean, that there was adequate consideration, and in this instance that there was a preexisting indebtedness of the husband to the wife forming a sufficient consideration for the value of the land conveyed. Plaintiff admits that a debtor may legally prefer a creditor, and may legally prefer his wife if she be a creditor, but to prefer her he insists the indebtedness must be clearly and affirmatively proven, and that the conveyance be made in good faith. On this phase of the case the court correctly instructed the jury:

"In this state the wife is entitled to have and hold her separate property, and can loan money to her husband with the right to receive it back the same as if she had loaned it to a stranger; and in this case if you believe from all the evidence that Mrs. Hadley received property or funds, from time to time, from sources outside the usual and joint earnings of herself and husband, and that she loaned these funds, derived from such other sources, to her husband with the understanding that same should be by him used as her property, and that the same should remain her property, then they would occupy the relationship to each other of debtor and creditor, and in that case he would have the legal right to convey to her enough of his land to repay her for such funds as he so received from her. If you should believe, however, from the evidence, that upon receipt of such property or funds by her she turned the same over to her husband as a gift to him and with no intention of retaining her separate ownership therein, then the relationship of debtor and creditor

would not exist, as to such fund, and he could not in that case, for the repayment of same, convey to her his land in derogation of the rights of his other creditors."

A reading of the testimony leads us to the conclusion that it measures up to the rule laid down by the court and to the requirements of the law in such cases. (*Monroe v. May, Weil & Co.*, 9 Kan. 466; *Brecheisen v. Clark*, 103 Kan. 662, 176 Pac. 137.) It was shown that there was an actual indebtedness substantially equal to the value of the land conveyed. It was an indebtedness always recognized to exist and often discussed long prior to the time Hadley became financially involved. The testimony shows that as to these obligations they dealt with each other as debtor and creditor and not as donee and doner. The debt was not built upon household duties performed by the wife or upon other wifely duties of the marriage relation, but that the money loaned was derived from property obtained from her father and her father's estate, from the rentals of lands she owned and personal earnings which was her absolute property. The money so derived was loaned by her to her husband, for which there was an actual promise of payment, and as to them she appears to have been a *bona fide* creditor. Among other things it was shown that at the time of her marriage she was given live stock by her father which, with the increase, amounted to $400. This was loaned to her husband and by him invested in a house in El Dorado. Two years later when they moved upon a farm, her father gave her other live stock which netted her $775, and this money was borrowed by her husband. In 1914 she received as her share of her father's property the sum of $2,000, which her husband borrowed from her. The rentals on a tract of land given her by her father amounting to $720 was likewise loaned to her husband. In addition to these she served for a time as deputy register of deeds, earning $600, which the husband borrowed from her. These debts with the accumulated interest made up, as has been found, an amount substantially equal to the value of the land conveyed to her.

This is essentially a fact case. Whether there was a preëxisting indebtedness and whether the transfer was made in good faith in payment of that indebtedness or to delay or defraud other creditors were questions of fact for the trial court and not for the appellate court. The findings and decision of the trial court, supported as they are by the evidence, cannot be overthrown on an appeal. The findings of the trial court practically end the controversy.

There is a complaint that there was an abuse of discretion by the

court in calling the jury in an advisory capacity, but it may be noted that plaintiff made no objection when the jury was called nor until this appeal was taken. It was an equity case, and it is too well settled to need discussion that the court in its discretion can call a jury to find on questions of fact submitted to it. Its findings are of course advisory only, and the court may adopt them in whole or in part or disregard them entirely and make findings of its own. In this instance the findings of the jury were adopted by the court. There was no error in calling the jury.

Another complaint is that there was error in admitting testimony to the effect that Hadley had borrowed money from his daughters without giving them notes therefor. It is said that it was done to show a custom in the family and that a custom was not pleaded and could not be proven. The transactions were not an approach to a custom. It is doubtful if the testimony tended to prove any of the issues in the case, but in no event could any prejudice have resulted to plaintiff from its admission.

Finding no material error in the record, the judgment is affirmed.