No. 29,615.

MINNIE SETTE, *Appellant*, v. KARL SETTE, and GILBERT SETTE as an Individual and as Executor of the Estate of Charles Sette, Deceased, et al., *Appellees*.

(295 Pac. 1096.)

Opinion filed February 7, 1931.

*Randal C. Harvey* and *Paul L. Harvey,* both of Topeka, for the appellant.

*R. C. Russell* and *Clyde Allphin,* both of Great Bend, for the appellees.

*Jerry E. Driscoll,* of Russell, and *D. A. Banta,* of Great Bend, intervening attorneys.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal is from the orders of the trial court overruling a motion to set aside a judgment and a motion for a new trial.

The basis of the motion to set aside the judgment was that the attorneys for plaintiff were wholly unauthorized to make the settlement contained in the stipulation signed by them on which the judgment was rendered. Both motions were filed by the plaintiff within three days after the judgment was rendered and on the hearing of the motions the plaintiff was represented by new and different attorneys from those who filed the pleadings for her, signed the stipulation and approved the journal entry of judgment. Three cases brought by the appellant against her son were consolidated and settled together and are consolidated in this appeal. The first was to set aside a contract and bill of sale of personal property, the second to set aside a deed given by plaintiff to defendant, and the third was a replevin action to recover property in the possession of the son, mostly household goods. The first two cases had been pending for more than a year and the third for much less time, but all had been continued because of constant negotiations for settlement.

At the June, 1929, term of court, when the cases were set for trial, a whole day was spent in an attempt to effect a settlement, so that both parties were perfectly familiar with the points of differ-

ence and the propositions involved. The cases were specially set for trial again on January 28, 1930, when attorneys for plaintiff asked the court for time to confer with their client, who was an old lady, and a conference was had by them with her and a number of her children in the chambers of the judge next to the court room. The conference lasted more than an hour, when the two attorneys for the plaintiff emerged and conferred with the attorneys for the defendant waiting in the court room. As a result, a stipulation was drawn and signed by the attorneys on both sides, after which the court was advised of the settlement and the witnesses were discharged at noon. About 2:30 p. m. the journal entry was prepared and presented to the court, and judgment was rendered accordingly. The motion to set aside the judgment was heard on the 17th and 18th of March, 1930, and the court made findings of fact and conclusions of law overruling the motion to set aside the judgment, and later overruled the motion for a new trial.

Some of the findings concern the history of the cases and the relation of the parties, about which there is no special controversy, which features are briefly covered in the foregoing statement. The following findings of fact are particularly pertinent to the matters involved in this appeal:

"7. Court met at the courthouse in Great Bend, Kan., on January 28, 1930, to try the above-named cases. The plaintiff was present with her attorneys, D. A. Banta and J. E. Driscoll. The defendants were present with their attorneys, Clyde Allphin and R. C. Russell. Court convened at 10 o'clock a. m. Thereupon the defendants said they were ready to try the case, and the plaintiff's attorneys asked for a few minutes' time, stating to the court that they thought they had just about reached a settlement of the cases, and the court allowed the parties a reasonable time to ascertain if a settlement could be effected.

"8. . . . and I find from the evidence that the plaintiff gave her attorneys authority to settle the cases, and such settlement was authorized by the plaintiff.

"11. I find from the evidence that the plaintiff never complained personally to her attorneys, that the settlement was unauthorized or that she did not approve of the same, and that, although she was present on March 17, 1930, at the time the motions were heard and the evidence introduced, the plaintiff never testified, and that both D. A. Banta and J. E. Driscoll testified that the plaintiff gave them verbal authority to make the settlement.

"12. I find from all the evidence that the attorneys for the plaintiff acted in good faith in making the settlement, and they had full power and authority to make the settlement; and that plaintiff personally has never made any complaint to her attorneys relative to said settlement, nor did she testify in

open court that she was dissatisfied with the settlement or that she had not authorized her attorneys to make the same, although she did swear to both the motions.

"13. I find from all the evidence that the settlement as agreed upon by the parties is just and equitable, and that the plaintiff's attorneys counseled with and advised the plaintiff relative to said settlement after making a full investigation of the facts of the case."

Appellant contends there was no evidence to support the findings as to any of the matters involved in this appeal, which are by her stated under three headings: (1) Whether the finding that plaintiff authorized her attorneys to make a settlement is supported by any evidence, and if authorized to do so, whether the settlement made was the one authorized by her. (2) Whether the settlement made was more disadvantageous to plaintiff than to have dismissed her cases or had defendant prevailed at the end of a trial. (3) Whether her attorneys acted in good faith toward her in connection with the settlement, especially with regard to the attorney fee they received in the settlement, and the turning over to the adverse party copies of their client's papers without her consent.

Appellant forcibly insists that an attorney has no power to settle a case unless specially authorized by his client to do so. This is conceded by appellees. Counsel for appellant, being thoroughly familiar with the rule on appeal as to conflict of testimony, state the question fairly as being one to determine whether there was any evidence to support the findings on the points involved.

No evidence in any case could be more conflicting than it is in this case. The two former attorneys for plaintiff testified positively as to being authorized by the plaintiff to make the settlement, and five or six of the children of the plaintiff, who were in the conference, testified as positively the other way. The plaintiff did not testify. The trial court accepted the testimony of the attorneys, some of which testimony was as follows:

That of D. A. Banta:

"I am one of the attorneys for Mrs. Sette. I signed the contract of employment. A number of efforts were made to compromise the litigation from the time it was started. . . . We always advise settlement. A number of propositions were passed back and forth between the plaintiff and defendants for settlement. . . . On January 28 Mr. Driscoll and myself and Mrs. Sette and the other parties went into the judge's chamber and discussed the matter pro and con. Mr. Driscoll obtained a piece of paper and made notations as we proceeded. There was a general expression that they would like to see the litigation stopped without any reference to the terms, and Mr.

Driscoll turned to Mrs. Sette and asked her what she thought about it, and she said: 'Whatever you say.' If she wasn't directing her attention to him, she wasn't directing it to anybody. I wouldn't be positive whether a vote was taken."

That of Jerry E. Driscoll:

"I am one of the attorneys who represented Minnie Sette in the suits in controversy. . . . We had a conference with our client and some of her immediate family in the room adjacent to the court room that day. I arrived about 9 o'clock and walked into the judge's office, and Judge Banta appeared shortly after. Then we met with some of the Sette people in the judge's private office, called them in from the court room. Mrs. Sette came in and sat there practically all the time we were negotiating. I got a sheet of paper from the stenographer's private office and made some notations of settlement. The two women did most of the talking, Mrs. Bell and her sister. The court or some one stepped up and told us it was 10 o'clock and we were going to go. We didn't leave until about forty minutes later. Mr. Banta got up and made a statement to the crowd about whether or not they would settle, and said: 'Let's put it to a vote.' I said: 'But what do you say, Mrs. Sette?' She hesitated a minute and made the statement: 'Whatever you say.' Banta then had this paper, this newspaper—or this pencil sketch—in his hand, and he said: 'All right, let's go see the other fellows.' Banta walked out with the paper in his hand. I followed him. . . . The different items put down on the paper here were discussed with our clients in the judge's chamber. . . . Our conversation in the judge's chamber covered the proposition of settling generally rather than any particular settlement. It covered the desirability of settling a case rather than trying it. That was when I addressed the remark to Mrs. Minnie Sette and asked her what she thought of it and she said: 'Now whatever you say.'. I couldn't tell whether she was addressing me personally or all those in the room. She didn't look particularly at me. . . . The only matters agreed to by the people who were gathered in the judge's chambers were the matters in defendants' exhibit 3, which are in my handwriting."

Defendants' exhibit 3, referred to by witnesses, is as follows:

"PROPOSITION.

"1. $1000, cash per year payable monthly, as rental, plus taxes

"2. Deed to City proposition with reservation, on her death to be sold & paid or divided between daughters

"3. $1000.00 atty fees costs

"4. All personal sued for except the old Es auto

"5. All property in house when she left it#

*She*

"She sign mtg & renewal mtg. if necessary, but not notes-

"Possession of real Est

"to Carl"

The testimony above quoted from the abstract compels the

answer to the first question involved, that there was testimony in support of the finding that the plaintiff authorized her attorneys to make the settlement. As to whether the settlement made was the one authorized by the plaintiff, we are compelled to look solely to the evidence of the attorneys because the only testimony we have from the witnesses for the plaintiff is entirely of a negative character without distinction as to features. Appellant insists that since, by the testimony of the attorneys, the last entry on the pencil memorandum, defendants' exhibit 3, was placed there by Mr. Russell, an attorney for the defendant, after the attorneys left the conference room, and settlement was made accordingly, that the terms of settlement were different from those indicated on the pencil memorandum as it was when it left the conference room. The addition made by Mr. Russell was "Possession of real est to Carl." The first entry was "$1,000 cash per year payable monthly as rental plus taxes." Does not this first entry imply possession? The real estate involved was three quarter sections of farm and pasture land. It is hardly conceivable that a tenant is to pay $1,000 per year and taxes as rental for property of which he is not to have possession. Appellant calls this added note a substantial modification of the settlement as shown by the other pencil notations. We think not. Under the deed which plaintiff sought to set aside she had the right to occupy or rent the farm to whom she pleased during her lifetime. The first item of the settlement was to rent it to defendant for a stated and regular rent to be paid monthly in addition to the taxes. This necessarily implies possession.

Appellant also maintains that there were details in the stipulation and a reference to leasing for oil and gas not mentioned in the pencil notes. These are not shown to have been vital and details are not usually noted in a memorandum for an agreement but are supplied as generally and ordinarily used.

Both attorneys explain this memorandum simply as items or catch words to the different features. This compromise settlement had been considered for more than a year. A whole day was devoted to it at the June term of court and more than an hour in the conference of the day when it became effective.

Appellant argues that the memorandum of settlement was ignored as to the fourth item when the stipulation was prepared and signed. That where it states "All personal property sued for except the old

Es auto," it refers to the $15,000 worth of property involved in the first of the three suits which was covered by a bill of sale given by plaintiff to defendant February 20, 1923, of a certain quantity of wheat, barley, corn, alfalfa hay and cane as well as calves, cattle, horses and implements. Appellant's interpretation of notation 4 is that all this grain and stock as enumerated seven years ago was to be returned to plaintiff. This would be practically impossible under the common custom and usage on farms with such property. Appellee says that both the fourth and fifth items refer to household goods involved in the third suit. It is well said it would hardly be probable that the same property would be the subject of two entries together, and yet for another reason the fourth entry cannot refer to the grain and live stock covered in the first suit because the old Essex auto was not in that list of property, but was in the list involved in the third suit—the replevin action.

We find no serious departure in the stipulation and judgment from the pencil notes made at the conference.

Appellant urges that the settlement should be set aside because it is inequitable and more disadvantageous than to have dismissed the actions or permitted defendant to prevail at the end of a trial. The court found the settlement was just and equitable, and in his opinion set out the items of financial advantage to appellant above the reasonable rental value of the farm. Without going into the details of such calculation, we think there was sufficient evidence to support this finding of the court and that some of the items enumerated by the court in the opinion show a financial advantage to her in the settlement.

As to the finding of the court that the attorneys for the plaintiff acted in good faith, we have not only evidence tending to show it but the circumstances are in favor of their conduct being in harmony with the interests of their client. The attorney fee had been talked of in the conference, and even if nothing might be due the attorneys from their client on their contract, there was nothing wrong for them, with the consent and approval of their client, to be paid by the opposing party when that arrangement as well as the amount to be paid was a part of the memorandum compromise agreement.

The copies of papers given by one of the attorneys to the attorneys for defendant to be used in cross-examination of certain witnesses, to affect the credibility of such witnesses, were collat-

eral to the issues in this case, and although their client had not given her consent to the use of them in this connection, yet it must be remembered that the issues on this motion to set aside the judgment were almost entirely between the client and her attorneys, under which circumstances a modification of the rule should prevail.

Appellant in conclusion cites *Herriman v. Shomon*, 24 Kan. 387; *Jones v. Inness*, 32 Kan. 177, 4 Pac. 95; and *Haverty v. Haverty*, 35 Kan. 438, 11 Pac. 364, showing the right of one situated as plaintiff was to relief as sought in these actions and by a motion to set aside the judgment. This may well be admitted, but an examination of the cases cited shows the settlements were being effected by the attorneys without authority from the client, which is not the situation here, as was found by the trial court.

All the subsequent elements and features of this case, so carefully and painstakingly worked out and presented by the learned counsel for the appellant, necessarily relate back to the question of authority of the attorneys from their client to make the settlement. But these subsequent features are consistently argued and presented by the appellant on the theory that no such authority was in this case given.

We find no error in overruling the motion to set aside the judgment nor in overruling the motion for a new trial.

The judgment is affirmed.

HARVEY, J., not sitting.