No. 32,938

B. V. McKinney and Viola Beebe, *Appellants*, v. W. I. Sackett and Myrtle Clum, *Appellees*.

(58 P. 2d 1121)

Opinion filed July 3, 1936.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris, John F. Eberhardt*, all of Wichita, *H. W. Goodwin* and *W. H. Schwinn*, both of Wellington, for the appellants.

*Edward T. Hackney*, of Wellington, for the appellees.

The opinion of the court was delivered by

Smith, J.: This was an action to partition real estate. Judgment was for defendants. Plaintiffs appeal.

The plaintiffs are the two children of Lizzie McKinney Sackett. She died intestate a resident of Sumner county on March 10, 1934.

The defendants are the adopted children of D. W. Sackett, who died intestate a resident of Sumner county on December 11, 1931.

Both Lizzie Sackett and D. W. Sackett had been married before. After the death of their respective spouses they were married on August 14, 1924.

On the morning prior to their marriage Mr. Sackett and his intended wife called at some law office in Wichita. At this time a member of the firm drew a contract for them. That contract was as follows:

"Whereas, David W. Sackett of Conway Springs, Kansas, and Lizzie R. McKinney of Wichita, Kansas, contemplate entering into the marriage relation and desire to enter into an antenuptial contract determining the rights of each to the other's property.

"Now, therefore, this agreement made and entered into on the 14th day of August, 1924, by and between David W. Sackett as first party and Lizzie R. McKinney as second party;

"Witnesseth: In consideration of the sum of one dollar by each to the other paid, and other good and valuable considerations, the receipt whereof is hereby acknowledged, the parties mutually agree as follows:

"First: The first party hereby agrees to waive and release the right, title and interest to which he would be entitled under the law of descents and distribution, to the following property, to wit:

"The northeast quarter (NE¼) of section eight (8), township twenty-eight (28), range three (3) east, in Butler county, Kansas; also lots 65 and 67 in Butler and Fisher's subaddition to the city of Wichita, Sedgwick county, Kansas.

"In consideration of the premises the second party hereby waives and releases the right, title and interest to which she would be entitled under the law of descents and distribution, in and to all the property of the first party; except the second party reserves a life estate in and to one half (½) of the property of the first party.

"The parties mutually understand that the waiver on the part of the first party, provided for in paragraph one, applies only to the property therein specifically described; the waiver of the second party, provided for in paragraph two, applies to all of the property which the first party now owns or which he may at any time own or die seized."

That contract was not executed at the time it was written. Whether it was ever executed is one of the decisive features of this case. It will be seen that if the above contract was executed and was in effect at the time of the death of Mr. Sackett then defendants in this case take the entire estate of Mr. Sackett after the death of Mrs. Sackett. If the contract was not in effect then the two plaintiffs would take one half and the two defendants one half.

The petition set out the facts as to the relationship of the parties and alleged that plaintiffs were entitled to one half of the estate and prayed partition. A second cause of action prayed for an accounting.

The answer set up the contract heretofore set out and prayed for judgment.

The reply admitted that the contract was drawn up but denied that it was executed. The reply further alleged that if the contract was executed it was abandoned by the parties to it and was not in effect at the time of the death of Sackett. The reply further alleged that if the contract was executed that Lizzie Sackett had no information as to the extent or value of the property of D. W. Sackett and that on that account the contract, if it were executed, was not understandingly or fairly made and was not valid and enforceable. The reply further alleged that if the contract was in fact signed by Lizzie R. Sackett it was done without her being advised as to her rights.

With the issues thus drawn the case was tried before the court. The defendants introduced their evidence first.

W. I. Sackett testified that he was a son of D. W. Sackett; that his father came to visit him about a year after the marriage; that his father told him, "you children have worked for this property and it is my intention that you should enjoy it, and he told me in a brief way that this property was taken care of by a marriage contract"; that he was in the room when his father had Myrtle, the other defendant, brought into the room; that when she came in D. W. Sackett said, "I have everything fixed the way I want it; I hope it is satisfactory to all;" that he turned to Mrs. Sackett and said, "Lizzie, do you hear?" and she did not answer; that Mrs. Sackett told him that she and his father had a marriage contract; that some time after the death of Mr. Sackett, Mrs. Beebe, one of the plaintiffs, asked him why he did not ask her for a copy of the contract; that she would have given him a copy if he had asked for it.

Myrtle Clum testified that before the marriage Mr. Sackett told her there would be a marriage contract and it would be fixed so that the property would go to each of their own children; that after the marriage he told her that they had such a contract. She corroborated the testimony of W. I. Sackett about the statement of her father just before his death; that just before they all went to the bank to examine the papers of Mr. Sackett, W. I. Sackett asked Lizzie Sackett for a copy of the contract and she said she was not going to have it settled that way; that Lizzie Sackett stated to her daughter-in-law that she did not think any of the estate of D. W.

Sackett went to her children; that when the lock box in the bank was opened there was nothing of any value in it.

Irving McClung, a neighbor, testified that Mrs. Sackett kept one bank account and Mr. Sackett another. He corroborated the testimony already referred to about the statement made by Mr. Sackett that he had his business fixed the way he wanted it.

Addie Lane testified that she knew Mr. and Mrs. Sackett and that she heard Lizzie Sackett say many times that they had a contract so that her children were to have what she had and his children were to have what he had at his death.

G. B. Pearce testified that he knew Mr. and Mrs. Sackett and that Mrs. Sackett told him they had a marriage contract. This witness, together with several others, testified that Lizzie Sackett would not sign checks to pay the household expenses until W. I. Sackett and Myrtle Clum gave her permission to do so.

Mrs. Irving McClung testified that Lizzie Sackett told her she could not deposit money for him and bring some back on account of their contract; that she slept with Lizzie Sackett a day or two before D. W. Sackett died and that at that time Lizzie Sackett told her that they had a marriage contract and her children were to have what she had and his children to have what he had when he died.

At the close of this testimony the plaintiff demurred to it on the ground that it failed to establish any defense to the action. This demurrer was overruled.

For the plaintiffs Ed Hackney testified that he had never been able to find the contract.

Edith McKinney testified that her husband was the son of Lizzie Sackett; that on the morning of the marriage she took Mr. and Mrs. D. W. Sackett to the office of Sidney Foulston and the agreement was dictated; that the contract was not signed in the office. She testified that while they were in the office D. W. Sackett did all the talking; that after they left the office they talked about not being satisfied with the contract; that on the way to Newton Mr. Sackett said he had quite a large life-insurance policy he was turning over to her; that at the time they were talking to the lawyer about the contract the amount of Lizzie Sackett's property was not given; that on one occasion when Lizzie and D. W. Sackett were riding with her and some of his property was pointed out she said, "Will didn't tell me he had all this before we were married."

Viola Beebe, one of the plaintiffs, testified that before the death

of Lizzie Sackett's first husband she could not deposit a check or make out a receipt; that when a tin box in which Mr. Sackett kept his papers was opened after his death it contained nothing of any value.

With the evidence substantially as above the court made extended findings of fact. Based upon these findings the court made conclusions of law as follows:

### "CONCLUSIONS OF LAW

"(1) As a matter of law the court concludes that a good and valid marriage settlement contract was made and entered into by and between David W. Sackett and Lizzie R. McKinney, and that there was no lack of good faith in the making of this contract, and that the same remained of full force and effect, unrevoked and not abandoned by the parties.

"(2) No unreasonable inadequacy or disproportion appearing, there is raised no presumption of concealment by D. W. Sackett in entering into this contract with Lizzie R. McKinney.

"(3) Any presumption that the contract had been abandoned by the parties by reason of the failure of the defendants to find or produce an original executed copy of said agreement has been overcome by the positive testimony of witnesses relative to the statements of the contracting parties showing the existence of said contract and that it had not been abandoned.

"(4) The court finds that the real estate owned by D. W. Sackett at the time of his death and the title to said real estate became vested in the defendants, W. I. Sackett and Myrtle Clum, as the sole heirs at law of D. W. Sackett, subject only to the provision of the antenuptial contract wherein the widow, Lizzie McKinney Sackett, became the owner of a life estate in and to a one-half interest therein, and that since the death of Lizzie McKinney Sackett said defendants, W. I. Sackett and Myrtle Clum, are the sole owners of all of said real estate, being clear of any claim of the plaintiffs."

Following the above conclusions of law the court entered judgment in favor of defendants, denying partition and finding defendants to be the owners of the property.

Plaintiffs filed a detailed request for findings of fact and conclusions of law. Plaintiffs also filed a request that in case judgment be given for defendants that the trial court state whether it gave effect to the presumption of law; that the fact appearing in the record that the signed copy of the alleged antenuptial agreement was not found in any of the papers of D. W. Sackett or in any of the places where he usually kept his valuable papers raised the presumption that the contract had been abandoned or destroyed and also whether or not he gives effect to the presumption of inadequacy or inequitableness of the contract in view of the fact that the evidence failed to disclose any independent advice to Mrs. Sackett. These motions

and requests were denied and overruled. No motion for a new trial was filed by plaintiffs.

The first assignment of error argued by plaintiffs is that the court erred in the admission of incompetent evidence over the objection of the plaintiffs. Without pointing out what evidence this was we will examine the question of whether we can consider this question in view of the fact that no motion for a new trial was filed. Clearly the plaintiffs are asking this court to hold that the court made an erroneous ruling as to the admission of evidence. This is one of the grounds for a new trial. (See R. S. 60-3001, subdiv. 2.) This court has held that only the trial errors set out in the motion for a new trial may be considered on appeal. In *Collins v. Morris,* 97 Kan. 264, 155 Pac. 51, this court said:

"There is nothing in the motion challenging the attention of the trial court to the principal claim now raised in this court, that incompetent or immaterial testimony in favor of defendant was admitted over the plaintiff's objections. The purpose of a motion for a new trial is to inform the trial court what errors are relied upon, in order that the court may, by granting a new trial, correct any error shown to exist. It would not be fair to the other litigant, nor fair to the trial court, nor to this court, if a defeated litigant were permitted to secure the reversal of a judgment on grounds not presented to the court below." (p. 266.)

In this case there was no motion for a new trial filed at all—hence no trial error can be reviewed by this court. (See *Brick v. Fire Insurance Co.,* 117 Kan. 44, 230 Pac. 309.)

Plaintiffs' next assignment of error is that the court erred in refusing to make the findings of fact and conclusions of law requested by plaintiffs. This assignment should be considered together with the next one, which is that the trial court erred in making findings of fact which were contrary to the evidence and not supported by any evidence. The argument on these two assignments is that the decision was contrary to the evidence. This is ground for a new trial. (See R. S. 60-3001, subdiv. 4.) It should have been set out in a motion for a new trial. Since no such motion was filed it will not be reviewed by this court.

The next assignment of error argued by plaintiffs is that the trial court erred in making the conclusions of law made, for the reason that these conclusions do not follow from the findings made in the case. These conclusions have already been set out in this opinion. These conclusions might very well be called findings of fact. No matter what they are called, they have the same effect. They are

findings upon issues of fact made out by the pleadings and are supported by some evidence. On this point we are unable to see anything more in the case than a controverted question of fact upon which the court reached a conclusion. Under the rule stated many times this court will not review such a question.

The next argument of plaintiffs is that the trial court erred in refusing to follow rules 51 and 52 of this court. Rule 52 is as follows:

"In all cases tried before the court without a jury where either party shall urge the application of a presumption of law, the trial judge, upon timely written request of the party setting forth the presumption of law which the party contends applies, shall file with the clerk, either separately or as part of his findings of fact and conclusions of law, a written statement as to whether, in deciding the case, he did or did not give effect to the presumption of law contended for."

It will be seen this matter was adequately dealt with by the court in the conclusions of law.

The judgment of the trial court is affirmed.