No. 32,964

BARNUM BROWN, *Appellee*, v. MINNIE BROWN, as an Individual and as Executrix of the Last Will and Testament of Frank Brown, Deceased, HELEN B. SPEER, FRANK D. SHAW, CHARLES G. SHAW (*Defendants*); THE TOPEKA STATE BANK, *Appellant*.

(68 P. 2d 1105)

Opinion filed June 12, 1937.

*Keene Saxon, Robert R. Jones, Oscar Raines, Ralph F. Glenn* and *Wendell B. Garlinghouse,* all of Topeka, for the appellant.

*J. T. Pringle,* of Burlingame, and *A. K. Stavely,* of Lyndon, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action to quiet title. The trial court

·made findings of fact and rendered judgment for plaintiff. One of the defendants has appealed.

The facts may be summarized as follows: In January, 1907, William Brown, a widower, residing in Osage county, died testate, the owner of 529 acres of farming land in Osage county and four lots in the city of Carbondale and personal property consisting principally of livestock and farming implements. He left surviving him four children—two daughters, and two sons, Frank Brown and Barnum Brown. By his will, which was duly probated, Frank Brown was the executor. The daughters were bequeathed $1,000 each, and this was paid. The remainder of the property was devised and bequeathed to the two sons in equal shares. Barnum Brown is a scientist. At the time of the death of his father, and since, he has been connected with the American Museum of Natural History in New York. His work for that institution takes him away from New York for months and even a few years at a time to where natural history studies and research are being conducted. Frank Brown continued to live upon and operate the Osage county farm. The two sons were tenants in common of the real property from the time of the death of their father until the fall of 1931. During this time Frank Brown paid the taxes on all of the property, and in addition to that sent Barnum Brown $2,500 for the use of his share of the land. In October, 1930, Frank Brown wrote his brother Barnum at Denver, where he was then supposed to be, asking him to stop on his way to New York "and take time enough to divide the property as I am not able to handle the whole farm any longer and then I shall probably have to raise money on my interest." This letter reached Barnum Brown about a month later in New York. Answering the letter, as to the suggested division of the property, he stated:

"This is what I have in mind: The property was left to us with an equal undivided interest. . . . The acreage is of unequal values and improvements have been made on some parts. . . . It would manifestly be unfair to divide it by acres. . . . I have in mind that the entire estate should be valued. . . . We should divide on a basis of value. . . . Take this as a basis and write me fully what you think after discussing the situation with some uninterested party."

This suggestion appears to have been agreeable to Frank, although he was a little slow getting it done; but by September, 1931, he had had the land appraised by three competent, trustworthy men, one of whom was the managing officer of the Carbondale State Bank. In this appraisal separate values were placed on each tract

of land by appropriate description. This appraisement was sent by Frank Brown to his brother, with a letter which proposed that Barnum Brown take certain described land shown in the appraisement and that Frank retain the other real property. On October 20, 1931, Barnum Brown wrote his brother Frank, accepting the proposal made to him in the letter which accompanied the appraisal. Following the exchange of letters and in pursuance thereof Frank Brown sent to his brother Barnum the old title deeds to the property, which, by their agreement, was to be the property of Barnum Brown, and at the same time retained in his possession the title deeds to the property which he was to retain. In his letter to his brother of October 20, 1931, Barnum Brown suggested that formal deeds be exchanged on his next visit to his brother, which he expected to be in the spring of 1932. In fact, they did not meet until the fall of 1932, at which time Barnum Brown stopped at Topeka between trains and met and talked with Frank Brown for a short time at a hotel. At that meeting it was orally agreed between the parties that Frank Brown should farm the land owned by Barnum Brown and should pay rent therefor by paying the taxes upon the land. By this arrangement, and through other tenants, Barnum Brown has been in actual possession since the fall of 1932 of the land which, by the exchange of letters between the brothers, it was agreed should be his. Frank Brown and Barnum Brown, by the letters exchanged between them and by the delivery of the old title deeds to the real estate Barnum Brown was to receive, intended to effect a partition of the real property owned by them as tenants in common.

Frank Brown for many years had transacted his banking business with the Carbondale State Bank. In March, 1931, he gave the bank a note for $4,000 and secured it by a mortgage on his undivided one-half interest on 160 acres of the land left to him and his brother by their father's will. It is conceded in this action that this mortgage is a valid lien upon an undivided one-half interest in the land described therein.

Frank Brown died in October, 1933, leaving a will, which has been duly probated, by the terms of which all of his property, except a small bequest, was devised and bequeathed to his widow, Minnie Brown, who became executrix of the will. At the time of his death Frank Brown was indebted to the Topeka State Bank, which had taken over the assets and assumed the liabilities of the Carbondale

State Bank, in the sum of $5,959.78 on notes signed by him, or by him and his wife, only some of which were secured by chattel mortgages. The bank's claim for that amount was allowed in the probate court in the estate of Frank Brown, and on this there has been paid $1,044. Helen B. Speer is a creditor of the estate of Frank Brown in the sum of $1,492.25, and her claim for that amount has been allowed against his estate.

This action was brought by Barnum Brown to quiet his title to the real property which, by the exchange of correspondence between him and his brother, it was agreed should belong to him, as against any claim of the widow of Frank Brown individually and as executrix, and as against the claims of the creditors of Frank Brown.

The trial court's conclusions of law were that the acts of Frank Brown and Barnum Brown, set out in the findings, effected a valid partition of the land owned by them as tenants in common, so that the plaintiff, Barnum Brown, became and is the owner in fee of that part of the land set off to or taken by him in the agreement between him and his brother for the division of the land, and that plaintiff's title to such land should be quieted as against the heirs, devisees and creditors of Frank Brown. Judgment was rendered in harmony with these findings and conclusions.

The Topeka State Bank, as a creditor of Frank Brown, was the only defendant to contest plaintiff's action to quiet title. It filed no objections to the findings of fact made by the trial court nor any request for other or additional findings, neither did it file a motion for a new trial.

In this court much of appellant's argument concerns the rulings of the court on the admission of evidence and the weight and sufficiency of the evidence to support the findings made. We shall not detail these points, or the arguments respecting them, for the reason that they are not properly before us. Alleged trial errors cannot be reviewed in the absence of a motion for a new trial. (*Collins v. Morris*, 97 Kan. 264, 155 Pac. 51; *Brick v. Fire Insurance Co.*, 117 Kan. 44, 230 Pac. 309; *Burnham v. Burnham*, 120 Kan. 90, 92, 242 Pac. 124; *McKinney v. Sackett*, 144 Kan. 290, 295, 58 P. 2d 1121.)

Appellant argues this court should consider the question presented *de novo*. This is upon the view that the trial in the court below was upon certain agreed facts and documentary evidence, citing *Matthewson v. Campbell*, 91 Kan. 625, 138 Pac. 638; *Record v. Ellis*, 97 Kan. 754, 150 Pac. 712; *Dowd v. Heuson*, 122 Kan. 278,

280, 252 Pac. 260. The point is not well taken. The case before us does not fall within the rule of the cases cited. Indeed, the detailed arguments of appellant respecting the admission of evidence, and especially the weight the trial court gave, or should have given, to parol testimony of the respective witnesses, demonstrates that the material facts respecting the voluntary partition of the property and the possession and use of the land before and after the claimed partition were not agreed upon. These facts are controverted by the pleadings and were contested throughout the trial, and parol testimony as well as documentary evidence respecting them was introduced and considered by the court. This case, therefore, falls within that class of cases in which the trial court is the trier of facts. (*Adams v. Morgan,* 142 Kan. 865, 52 P. 2d 643.) Under our constitution (art. 3, § 3) except as to proceedings in quo warranto, mandamus and habeas corpus brought originally in the supreme court, its jurisdiction is appellate. It has no authority to try controverted issues *de novo.* (See *State, ex rel., v. Telephone Co.,* 115 Kan. 236, 270, 223 Pac. 771; *Agricultural Ins. Co. v. Aetna Ins. Co.,* 119 Kan. 452, 458, 459, 239 Pac. 974, and cases there cited.) Under our constitution (art. 3, § 6) and statutes (G. S. 1935, 20-301) our district courts have general jurisdiction in the trial of contested issues of fact. This is familiar law in this state. Where the question is raised that the evidence does not support findings of fact made by the jury or trial court, this court will examine the evidence far enough only to see if there is substantial, competent evidence to support the findings made; but in doing so it will not weigh conflicting evidence nor pass upon credibility of witnesses. (*Stanley v. Stanley,* 131 Kan. 71, 74, 289 Pac. 406.) Though not properly raised, we have examined the questions argued relating to the admission of evidence and find no error in the rulings of the trial court. We also find substantial, competent evidence to support the findings of the trial court. In either view taken, the findings are binding on this court. (*Huston v. Tower,* 126 Kan. 527, 268 Pac. 839; *Calkins v. Hadley,* 129 Kan. 140, 281 Pac. 919; *Sette v. Sette,* 132 Kan. 375, 295 Pac. 1096.)

The only legal question presented by this appeal is whether the findings made by the trial court, hereinbefore summarized, considered with the pleadings, support the conclusions of law and the judgment rendered. By his petition plaintiff alleged he was the owner in fee of the land, the title to which he sought to quiet, by

virtue of a voluntary partition agreement between himself and his brother, owners as tenants in common, and that he was in the actual possession thereof. Appellant's answer denied there had been a voluntary partition of the real property, and denied plaintiff's possession of the land, the title of which he sought to quiet. Briefly stated, these were the issues raised by the pleadings. The trial court found in accord with plaintiff's allegations. The only thing lacking to complete the record of the voluntary partition was the exchange of deeds between the two brothers, and recording them. This was not essential to effect a valid partition of the lands between the parties. At common law tenants in common could partition by parol. (47 C. J. 271; 20 R. C. L. 721.) Littleton (§ 241 *et seq.*) mentions four methods by which tenants in common may make partition by consent, and one by compulsion:

"The first is, where they agree to divide the lands into equal parts in severalty, and that each shall have such a determinate part." (2 Blackstone, 189.)

This doctrine is recognized in this state. In *Kuhn v. Kuhn,* 112 Kan. 155, 210 Pac. 343, a parol agreement for partition was enforced. In *McCabe v. McCabe,* 96 Kan. 702, 153 Pac. 509, there was an oral family settlement for the division of real property between cotenants. Appropriate quitclaim deeds were to be made by the contracting parties to carry their contract into effect. The parties acted under their agreement, except there was a delay of about six years in making quitclaim deeds. In the opinion it was said:

"It is of no consequence that the quitclaim conveyances of his sisters evidencing that fact were not executed until 1912, nor would it affect his interest" (the grantee in the quitclaim deed) "if these conveyances were never made." (p. 704.)

In *Riffe v. Walton,* 105 Kan. 227, 182 Pac. 640, it was held, "Family settlements of estates are favorites of the law," citing cases (p. 231 *et seq.*). These authorities are all to the effect that adult members of a family, owners of real property as tenants in common, may agree among themselves to a division thereof so that each, or certain of them, become the owners in fee of specific parcels thereof, and that such agreements, when fairly made and acted upon, will be enforced in an appropriate action therefor, even though the agreement itself was in parol. The present action to quiet title is appropriate for that purpose. (*Kuhn v. Kuhn,* supra.)

In this case, however, plaintiff does not have to rely upon an oral agreement for partition. The agreement for partition in this case

was made by correspondence between the brothers, which brought about an appraisement of the respective parcels of land, which appraisement was used as a basis for the division of the real property which was made and agreed upon, as shown by the correspondence. There was parol testimony material on the question of the intention of the parties, particularly as to the effective date of the agreement, and material, also, on the question of plaintiff's actual possession of the property, but so far as it pertained to the actual division of the property, and which parcels each should own, the agreement was in writing.

Appellant argues that these writings were not sufficient under the statute of frauds. We pass the question of whether the statute of frauds has any application, but simply note that where there is oral partition the courts are not in accord with respect to the application of the statute of frauds. (47 C. J. 271; 20 R. C. L. 721.) In determining the sufficiency of the agreement under the statute of frauds the several letters exchanged between the brothers pertaining to the division of the property, together with the appraisement which was made and used by them in making the division, must be construed together as one instrument. (*Arnett v. Wescott,* 107 Kan. 693, 193 Pac. 693; *Steele v. Nelson,* 139 Kan. 559, 562, 32 P. 2d 253.) So construing them, we find them sufficient under the statute of frauds. Appellant points out that plaintiff, after receiving the appraisement in which each parcel of the real property was described as surveyed and valued, in his letter accepting his brother's suggestion as to the tracts of land he would take, referred to the respective tracts by terms commonly known between them rather than by the survey description. It was argued that this reference was too indefinite. The terms used were familiar to the parties and were definite as to them. There was no lack of certainty there. The evidence tended to show that Mrs. Frank Brown, at the direction of her husband, wrote one of the letters to plaintiff, and that it was signed "Brother." Appellant argues that this letter was not signed by "the party to be charged," within the meaning of the statute of frauds. This question is raised in this court for the first time, and that would be sufficient reason for us to ignore it. Aside from that, the point is not well taken. The name used was one which Frank Brown ordinarily used in writing to plaintiff. There is no doubt as to whom it referred. The fact, if it was a fact, that his wife wrote the letter and signed his name to it, at his request and with his knowledge and

consent, makes it just as binding upon him as though he personally had written it.

Appellant argues that this partition was fraudulent to it. No claim of that kind was made in its answer. The trial court did not find that the transaction was fraudulent to appellant and no request was made for it to so find. More than that, there is no evidence in this record that would have supported such a finding had it been made. The managing officer of the Carbondale State Bank —for more than a quarter of a century Frank Brown transacted his banking business with it—knew that Frank Brown had only an undivided one-half interest in the real property, and that the plaintiff was the owner of the other one-half interest, and appellant, succeeding to the interest of the Carbondale State Bank, was also familiar with that fact. No misrepresentation with respect thereto was ever made to either of the banks, either by Frank Brown or by the plaintiff. Neither of the banks ever extended credit to Frank Brown upon any representation that plaintiff was obligated to pay. There was no claim in the pleadings or finding by the court that Frank Brown was insolvent at the time he and his brother agreed upon a division of the property. Prior to that time his financial statements showed him to be worth many times his indebtedness to the bank. There is evidence to the effect that he had heavy financial losses about the time of his agreement with his brother, or shortly before, and his own letter speaks of the possible necessity of having to use some of his real property as security, a thing, in fact, which he did do. But even with those losses, his assets were far in excess of his liabilities. Crop failures and depressed values of property to the time of his death, and since, possibly make his estate now insolvent, but there was no claim in the court below that that condition existed at the time of the agreement for the division of the property. Appellant cites *Brown v. Baxter*, 77 Kan. 97, 94 Pac. 155, 574, and other cases to the effect that family settlements, if fairly made and not in fraud of creditors, should be upheld. The creditors referred to in *Brown v. Baxter*, supra, were creditors of the common ancestor, which in this case would be William Brown, not creditors of one of the cotenants.

We find no error in the record. The judgment of the court below is affirmed.