No. 36,058

Columbia Casualty Company, *Appellant,* v. H. A. Sodini et al. (Henry E. Pratt, Intervening Petitioner, Rush McAllister, Intervening Defendant), *Appellees.*

(156 P. 2d 524)

Opinion filed March 10, 1945.

*J. N. Tincher, Clyde A. Raleigh, J. N. Tincher, Jr.,* all of Hutchinson, and *John Alan Appleman,* of Urbana, Ill., were on the briefs for the appellant.

*Roy C. Davis, Warren H. White, Frank S. Hodge, Wm. H. Vernon, Jr.,* and *Eugene A. White,* all of Hutchinson, were on the briefs for appellee Henry E. Pratt.

The opinion of the court was delivered by

THIELE, J.: The general nature of this action was to obtain a local judgment based on a judgment rendered by the United States District Court of Missouri, and for interlocutory relief. The plaintiff appeals from certain rulings hereafter mentioned growing out of the trial on an intervenor's petition.

In order that the various specifications of error may be understood and disposed of, it is necessary to make a general review of the pleadings filed and of some interlocutory orders made.

On August 27, 1940, plaintiff filed his petition alleging he had secured a judgment against the defendant, Sodini, in the United States District Court of Missouri and that execution had been issued thereon and returned unsatisfied; that defendant, The Chalmers Hotel Corporation, was a corporation organized about April 29, 1940, and according to its records Sodini held 998 shares of its stock and that a good part of Sodini's personal assets was in the corporation; that Sodini had moneys and credits in the hands of the defendant, The American National Bank. Then follow allegations setting out the manner in which Sodini became indebted to the plaintiff and that Sodini had been concealing his assets, and that unless restraining orders were issued against Sodini, the Hotel Corporation and the Bank, any judgment obtained by plaintiff against Sodini would be worthless for the reason Sodini would have sold or converted the property and removed the same from the jurisdiction of the court.

On the same day the petition was filed, restraining orders were issued *ex parte*. Motions to set aside the several orders were filed, and while they seem to have been denied as such, the record as abstracted shows that under date of September 16, 1940, a temporary injunction was granted conditioned on a $10,000 bond being given within fifteen days. No such bond was ever given.

Later Sodini filed his answer and cross petition and plaintiff filed its reply. On January 13, 1941, plaintiff obtained a judgment against Sodini for the amount prayed for.

The matters of present importance grow out of pleadings filed by Henry E. Pratt who was permitted to intervene and by Rush Mc-Allister who was made a party defendant on motion of the plaintiff.

The pleading filed by Pratt on September 26, 1940, was called an intervening petition, and alleged Pratt resided in Peoria, Ill., and that in April, 1940, he was solicited by Sodini to assist Sodini in the

purchase of the interest of one Dick Foil in and to the Chalmers Hotel property; that Sodini advised Pratt he was organizing a corporation which would take over the hotel property and operate it, and that as security for any sums advanced all of the capital stock certificates would be endorsed in blank and turned over to Pratt as collateral security, and that pursuant to such arrangement he advanced funds in the sum of $————, notes received being in usual form of collateral notes; that default in the payment of the notes was made and they were foreclosed in accordance with their terms, and on September 23, 1940, in order to protect himself Pratt was obliged to purchase all of the capital stock of the Chalmers Hotel Corporation so pledged; that Pratt was the owner and holder of the stock which carried with it ownership of all the property of every kind and nature belonging to the hotel corporation.

On December 17, 1940, plaintiff filed its answer to Pratt's intervening petition, containing a general denial, and an allegation that the extent of Pratt's relations with Sodini was conspiracy to assist Sodini in "beating" his indebtedness and that there was nothing pleaded in the intervening petition which would entitle Pratt to the relief sought by him.

To complete the story, we note that the defendant McAllister filed an answer on February 6, 1941, which needs but short notice. He alleged that on October 1, 1940, he purchased from Pratt, 1,000 shares of the common stock of the hotel corporation and pursuant to his purchase contract he gave Pratt a note for the balance of the purchase price in the sum of $6,500, payable in installments at the rate of $200 per month and pledged as security 750 shares of the hotel corporation. Allegations about performance of the contract of purchase are not of present importance. McAllister prayed the court to protect his rights in and to the stock and assets of the hotel corporation and that he be decreed the owner, subject to the terms of his contract and notes with Pratt.

On July 2, 1941, the case came on for trial as between Pratt and plaintiff. Pratt offered evidence in support of his cross petition. At the conclusion the plaintiff demurred for the asserted reasons that the intervenor's claim to the property was under an unrecorded lien which was invalid against plaintiff who was a judgment creditor; that intervenor had actual knowledge of the existence of plaintiff's claim which resulted in judgment and the pledgee and interpleader had no right to buy in his own collateral; that there was no change

in possession so that any third party would have any notice pledgee would be ahead of him; that the purchase by the intervenor of the pledged property was void; that the mortgage was absolutely void as to the third persons for the reason Sodini was permitted to remain in possession, and that the evidence disclosed there was virtually a partnership between Sodini and Pratt which would bar Pratt from any rights as against plaintiff as a judgment creditor.

The trial court took the matter under advisement, each party submitting several briefs, and not until about July 24, 1943, did the trial court indicate he was about to overrule the demurrer and render judgment. At that time plaintiff sought permission to file a supplemental answer and cross petition to Pratt's intervening petition. On July 25, 1943, the trial court overruled the demurrer and rendered judgment that plaintiff had no right, title, interest, lien or claim by reason of its judgment against Sodini or otherwise in and to any of the property or the capital stock of the hotel corporation, and that the property was owned by Pratt and McAllister in accordance with their agreements. On September 23, 1943, the trial court denied plaintiff's motion for permission to file the amended answer. No motion for a new trial was filed, and on the same day, September 23, 1943, plaintiff served notice of appeal from all orders, judgments and decrees, from the order overruling the demurrer and from the order made September 23, 1943.

Plaintiff specifies error in nine particulars. The first specification is there was error in the ruling on the demurrer. The other specifications, in part, make some reference to the above ruling, but otherwise refer to trial errors.

Did the trial court error in its ruling on the demurrer? Under repeated decisions of this court, it has been held that in testing the sufficiency of evidence as against a demurrer, the court shall consider all of the evidence attacked as true, shall construe it favorably to the party offering it, shall disregard the unfavorable evidence, shall not weigh any differences and, if so considered, there is any evidence to sustain such party's case, the demurrer should be overruled. (See, e. g., *In re Estate of Bond,* 158 Kan. 776, 781, 150 P. 2d 343, and cases cited.) In view of that rule we need notice only such evidence as tends to support the allegations of Pratt's intervening petition.

A summary of the testimony of Pratt as a witness for himself is that Pratt was an attorney of Peoria, Ill., and had dealings with Sodini and knew of the Chalmers Hotel deal; that Sodini was in-

debted to him for over $4,000; that he loaned Sodini an additional $6,000, taking a collateral security note to secure $10,000. The note was offered in evidence. It was dated at Peoria, Ill., May 15, 1940, was for the sum of $10,000 and due three months after date or on demand, and as collateral Sodini pledged to Pratt 998 shares of the common stock of The Chalmers Hotel, Inc., a Kansas corporation, as evidenced by Certificate No. 1, issued May 8, 1940, to Sodini and by him endorsed on the back as collateral security. Under the terms of the note Sodini authorized Pratt, or anyone holding under him, on nonpayment of the note, to sell the collateral at public or private sale without notice and to apply the proceeds to the note and interest; that at such public sale Pratt or his assigns might be a purchaser. There was a further provision that if Pratt should feel himself insecure he could sell prior to maturity. This note was not filed for record in Reno county, Kansas, nor anywhere else. Pratt further testified that this note was foreclosed by an attorney of Peoria named Hull.

Hull testified that he was an attorney practicing in Peoria, Ill., and had offices in the same suite as Pratt, and that he handled some business for Pratt; that he had prepared the collateral note relied on and that Pratt had the note and collateral stock from about the date of the note; that witness had prepared a notice of foreclosure sale and sent it to Sodini by registered mail and Sodini received the notice on September 18, 1940; that on September 23, 1940, the stock was sold at public sale at the National Bank & Trust Company of Peoria and that Pratt bid the stock in for $9,000; that after the sale witness notified Sodini at Hutchinson, Kan.; that witness came to Hutchinson and procured a certificate of stock for 998 shares issued to Pratt. We need not detail testimony of the sale of the stock to McAllister.

In outlining the pleadings, we have made no mention of the fact that neither the plaintiff nor the intervenor pleaded the laws of Illinois, nor presented an issue with respect to them, nor was anything pleaded that such laws were relied upon by either party as affecting its or his respective rights. However, during the examination of the witness Hull, a question was asked concerning the law of Illinois and it was then stipulated that either party could cite and use Illinois authorities as though the same had been pleaded. The stipulation did not include any statement of what either party claimed, nor what statutes and decisions were relied on, and we are

left to assume the trial court's attention, at some stage, may have been directed to the statutes and decisions included in the briefs filed here, the most of which pertain to chattel mortgages.

Appellant directs our attention to the Kansas chattel mortgage statute (G. S. 1935, 58-301 *et seq.*) and to our decisions interpreting it, and to what it refers to as the Chattel Mortgage Act of Illinois, being apparently Illinois Revised Statutes 1941, chapter 95, and Illinois decisions interpreting it. It may be said that each of the above statutes pertains to mortgages, trust deeds or other instruments having the effect of a mortgage or lien on personal property and their validity as to third persons, unless possession of the property is delivered to the grantee.

As we understand appellant's contentions, they may be briefly stated thus: A share of corporate stock is not property but an intangible resembling a chose in action and having no existence except in the state of incorporation; that the present controversy is not over the stock but over the property of the corporation; that if Pratt claims by reason of a chattel mortgage or pledge by Sodini personally, the same is void for the reason a shareholder cannot pledge corporate assets; the instrument encumbering the property was never recorded nor possession taken of the hotel, and Pratt had knowledge of Sodini's debts. These various contentions are presented in various manners.

Appellant's argument in support of those contentions is somewhat confused for without pointing out whether it is relying upon Kansas or Illinois law, it is said that for a chattel mortgage on the equipment to be good the mortgage must have been recorded in Reno county, Kansas, and for a valid sale to be made under Illinois law the property would have to be sold in Reno county, Kansas, because Sodini resided there and the property was located there, and that the sale of the stock in Illinois was invalid as it must have been sold in the state of incorporation of the hotel corporation.

The evidence, however, discloses that no attempt was made by Sodini to mortgage or pledge any assets of the hotel corporation, but on the contrary shows that corporate stock was all that was mentioned in any instrument offered in evidence or relied on, and that ownership of corporate stock and whatever was incident to that ownership was all that was before the court in ruling on the demurrer and in rendering judgment. It may here be noted that no garnishment or attachment proceedings were had by plaintiff against

any property either of the hotel corporation or Sodini and no rights under proceedings of that nature are here involved.

The real and substantial question is whether the transaction concerning the stock was a pledge or a chattel mortgage, and when that is determined what law is applicable.

Generally, it may be said that a pledge is a bailment of personal property as security for a debt or engagement, the property being redeemable on specified terms and subject to sale in the event of default (41 Am. Jur. 582, 49 C. J. 896) and that a chattel mortgage is an instrument whereby the owner of personal property transfers the title or creates a lien thereon as security for the payment of money or performance of the contract, subject to being defeated by payment of the money or performance of the contract (10 Am. Jur. 715, 14 C. J. S. 582). Without noting effects of statutes for recording or filing of chattel mortgages, it may be said that a general distinction between a pledge and a chattel mortgage is that in a pledge, delivery of the property, either actual or constructive, is absolutely essential, while a chattel mortgage may be good without delivery (10 Am. Jur. 723, 14 C. J. S. 582). There is no contention in either brief that either Illinois or Kansas has a statute regulating pledges generally, although each does have such a statute with reference to chattel mortgages.

In *Atkinson v. Bush*, 91 Kan. 860, 139 Pac. 393, it was held:

"To constitute a valid pledge of personal property as security for a debt it is essential that there be an actual delivery of the property by the pledgor to the pledgee, and the pledgee must thereafter hold possession of the pledge openly and adversely to the pledgor." (Syl.)

In Illinois it has been held that a pledge is a lien created by the delivery of personal property to another upon express or implied agreement that it shall be retained as security for a debt, and to create a pledge the pledgee must have possession and control of the property. (*Belden v. Perkins*, 78 Ill. 449; *Corbett v. Underwood*, 83 Ill. 324; *Farson v. Gilbert*, 114 Ill. App. 17; *Immel v. Travelers Insurance Co.*, 373 Ill. 256, 26 N. E. 2d 114.)

The evidence shows clearly that when Sodini executed his collateral security note to Pratt he delivered with it the corporate stock certificate. When these facts are considered in connection with the provisions of the note, the conclusion we draw is that a pledge was made, not a chattel mortgage, and that would be the result under the law of either Kansas or Illinois. The transaction took place

some months before the instant action was filed, and the filing of the action did not change its nature.

In appellant's brief, it is not made clear whether it relies solely on the laws of Kansas or on those of Illinois. Although the stock involved was that of a Kansas corporation, the collateral security note, the wording of which commences "$10,000.00 Peoria, Illinois, May 15th, 1940" and continues that it is payable to the order of "Henry E. Pratt, of Peoria, Illinois," was executed in that state and was ultimately declared due and the pledged property appropriated to its payment in that state. The note does not indicate the residence of Sodini, and there is no evidence that at the time of its execution he was a resident of Kansas. It would appear the regularity of the transaction was governed by the laws of Illinois.

That a share of stock may be the subject of a pledge was held in *Allmon v. Salem Building Assn.*, 275 Ill. 336, 114 N. E. 170, where it was noted that in commercial transactions, certificates of stock are very often pledged as security for loans without any thought that the pledgees became owners other than of qualified ownership for security; that in such case it is not customary to make transfer on the books of the corporation. After quoting from a statute pertaining to execution on corporate shares, which recognized that pledged shares could only be taken for excess of value over the pledge (for statute effective in 1940 see Ill. Rev. Stat. 1941, ch. 77, § 55), the court further said that in *Rice v. Gilbert*, 173 Ill. 348, 50 N. E. 1087, it was held the purpose of the statute was to give more commercial freedom to transfers of stock for purposes of collateral security than existed before and to make shares of stock as nearly negotiable as possible. In *Rice v. Gilbert*, supra, the syllabus recites:

"Incorporeal property, such as negotiable instruments, stock in incorporated companies, and choses in action generally, may be pledged by written transfer of title."

Apparently, the shares of stock in both of the above cases was that of Illinois corporations. For discussion of the law pertaining to pledge of corporate stock see 18 C. J. S. 1004 *et seq.*

Appellant cites no Illinois or other authorities that stock in a corporation organized in another state may not be the subject of a valid pledge in Illinois. It is a well known fact that banks and institutions and persons engaged in loaning money, take stocks in corporations as collateral security and that without regard to the

place of incorporation, and in the event of default, sell the collateral at the place where the loan was made and not in the state where the corporation was incorporated. In the absence of any statutory regulation to the effect contended for by appellant, we think it ought not to be held that the sale in Illinois of the stock pledged to the payment of a note made in Illinois, was not valid solely because the stock was that of a corporation incorporated in Kansas.

It is also suggested that Pratt as a pledgee had no right to purchase his own collateral. We observe that the note in question gave Pratt the right to purchase at a public sale and the evidence is that the collateral was sold at public sale and bid in by Pratt. Although it was said in *Killian v. Hoffman,* 6 Ill. App. 200, that a pledgee cannot purchase at his own sale, in that case there seems to have been no contract agreement that he could do so. See, also, *Chi. Art. Well Co. et al. v. Corey et al.* 60 Ill. 73. But in *Wetherell v. Johnson,* 208 Ill. 247, 250, 70 N. E. 229, it was recognized that upon agreement with the pledgor he could do so. See, also, *Corn Belt Bank v. Forman,* 264 Ill. App. 589, for analogous case, and see, also, *Lynn v. McCue,* 94 Kan. 761, 147 Pac. 808, and 18 C. J. S. 1035.

Appellant presents a part of its argument predicated on its version of the facts, and on the legal proposition that the transaction between Sodini and Pratt constituted a chattel mortgage and not a pledge. We have already discussed the legal proposition. The claimed state of facts ignores the rule heretofore stated and binding on us for the consideration of evidence when tested by a demurrer.

Appellant directs our attention to *Beidler v. Crane* et al., 135 Ill. 92, 25 N. E. 655, and insists that it is controlling. We shall not attempt any detailed statement of the facts in that case, nor make any comparison with those in the instant case further than to say that opinion was rendered to dispose of suits in the nature of creditor's bills. Beidler claimed in his answer that he was the owner of certain patents and corporate shares by absolute conveyance from the judgment debtor. The court held he was a mere mortgagee or pledgee and not the absolute owner, and that a conveyance, absolute upon its face might be well enough between the parties, but that when such a transfer was in reality only intended as security, it rendered the transfer only constructively fraudulent, and when the assignee attempted to justify the assignment as absolute when it was not, it afforded strong evidence of actual fraud; that the form of the assignment was absolute and tended to deceive

and in substance created secret trusts, and as such lacking in good faith and frauds upon the rights of creditors. Reference is made to that opinion for a more complete recitation of the facts considered and the law applied. The rule of that case, considered in the light most favorable to the appellant, is not applicable to the situation before us, for only by resolving the evidence favorably to the demurrant and unfavorably to the party offering it may it be said there is such a state of facts as warrants its application, even if it be held the present action is in any sense an action in the nature of a creditor's suit. We therefore need not deal more critically with whether the rule contended for should be followed.

The suggestion that Sodini and Pratt were partners finds no support in the evidence.

The other errors urged are that the trial court erred in refusing permission to appellant to file an amended or supplemental answer and cross petition to the intervening petition, in refusing to hear appellant's evidence and in rendering judgment. If erroneous, these were trial errors to which the trial court's attention should have been challenged by a motion for a new trial. There was no motion for a new trial, and the questions are not open to appellate review. (See *Brick v. Fire Insurance Co.*, 117 Kan. 44, 230 Pac. 309; *Brown v. Brown*, 146 Kan. 7, 10, 68 P. 2d 1105; *Rierson v. Southern Kansas Stage Lines Co.*, 146 Kan. 30, 69 P. 2d 1; *McKinney v. Sackett*, 144 Kan. 290, 58 P. 2d 1121; and cases cited.)

It has not been made to appear the trial court erred in the orders, judgments and decrees appealed from, and the same are affirmed.